[Georgia Pacific Railway Co. v. Wilks.]

# Georgia Pacific Railway Co. v. Wilks.

## Bill in Equity for Specific Performance of Contract.

1. *Railroad corporation; right to acquire lands.*—Under the provisions of the act approved December 29th, 1868 (Sess. Acts 1868–9, p. 462), a railroad company had power and capacity to acquire, by gift or purchase, "any lands in the vicinity of said road, or through which the same may pass, so far as may be deemed convenient or necessary by said company, to secure the right of way, or such as may be granted to aid in the construction of said road;" and this right having been acquired while said statute was of force, it is not taken away or affected by the subsequent repeal or modification of the law.

2. *Consolidation of railroad companies.*—Under statutory provisions authorizing the consolidation of two or more railroad corporations (Code, § 1583), which have been of force since December 29th, 1868, the new corporation possesses "all the rights, powers and franchises conferred upon said" original corporations; but this provision only applies to railroads which, when consolidated, will admit the passage of cars continuously without break or interruption.

3. *Dismissal of bill on demurrer, without allowing opportunity to amend.* When the chancellor, on sustaining a demurrer to a bill, dismisses it, because "no amendment can be made" which will give it equity, this relieves the complainant of the duty of asking leave to amend; and this court, while affirming his ruling on the demurrer, will reverse and remand, in order that the complainant may have an opportunity to amend, unless the record affirmatively shows that no amendment can give equity to the bill.

APPEAL from the Chancery Court of Fayette.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 19th February, 1884, by the Georgia Pacific Railway Company, a corporation chartered under the laws of Alabama, against M. D. Wilks and his wife; and sought the specific execution of a written contract under seal, executed by the defendants on the 12th March, 1880, by which they promised and bound themselves to convey to A. H. Colquit and his associates "all the coal and iron upon and in" certain lands particularly described, "together with the right to enter upon the said lands, and prospect for coal and iron, and to mine the same, if they should desire," and the right of way for "roads and railroads." This instrument recited that Colquit and his associates proposed to "build a railroad from some point on the Tombigbee river, at or near Columbus or Aberdeen, Mississippi, or from some point on the South & North Alabama railroad, or from some

[Georgia Pacific Railway Co. v. Wilks.]

point on the Alabama Great Southern railroad, or from some point on the Memphis & Charleston railroad, and running into or through the county of Fayette, or the county of Walker, State of Alabama, or both;" stated as its consideration "the benefits and advantages likely to accrue" to the promisors from the building of such railroad, and required the said Colquit, his associates and successors, to begin the work of surveying, grading or building the railroad within four months, and to extend it to Fayette or Walker county within three years. This instrument is set out in full in the former report of the case (79 Ala. 180-87), and it is unnecessary to repeat it here. The bill alleged that this written instrument was transferred and assigned by Colquit and his associates, on May 4th, 1882, for valuable consideration, to the Richmond and Danville Extension Company, a corporation chartered under the laws of New Jersey and Mississippi, and afterwards, on December 20th, 1883, by said company to the complainant, "for certain considerations expressed in the written assignment;" that the railroad was commenced, constructed and completed within the time stipulated, and that the defendants refused to execute a conveyance to the complainant, according to the terms of said written obligation, when tendered for execution. The bill alleged, also, that the complainant was a body corporate created under the laws of Alabama, and annexed as an exhibit a copy of its organization by the consolidation of several other railroad companies, as stated at length in the opinion of the court.

The defendants demurred to the bill, assigning various causes of demurrer, all of which were overruled by the chancellor; but his decree was reversed by this court on appeal, and the cause was remanded, as shown by the former report. 79 Ala. 180. After the remandment of the cause, the bill was amended by leave of the chancellor, by striking out the name of Mrs. Wilks as a defendant, and waiving any claim of specific performance against her, and by adding an averment, "that said written agreement was acquired by your orator as property taken for subscription to the capital stock of said Georgia Pacific Railroad Company by said R. & D. Extension Company." The chancellor sustained a demurrer to the bill as amended, on the same grounds as before, but gave leave to make further amendments; and a second amendment was then made, setting out in full the proceedings by which the complainant was organized as a corporation, and the charters of the several railroad companies which were

thus consolidated. The chancellor, on demurrer, held the bill still defective, "because it fails to show that the complainant has any right to acquire the mineral lands claimed;" and further holding that, "as the bill shows that complainant was incorporated under the general laws in the Code, no further amendment can be made so as to show its capacity to hold the said lands, he dismissed the bill." This decree is now assigned as error.

McGUIRE & COLLIER, and JAMES WEATHERLY, for appellant.—(1.) The first amendment, alleging that said written contract sought to be enforced "was acquired as property taken for subscription to the capital stock of said company," brought the case within the very terms and letter of the statute conferring on railroad companies the right and power to acquire lands.—Code, 1876, § 1829, subd. 6. (2.) But the complainant was created as a corporation by the consolidation of several constituent companies, and acquired all the rights, powers and franchises of each of those companies.—Moraw. Corp., §§ 548-57, 509, 533. Among the powers conferred on one or more of these companies was the right to acquire, by gift or purchase, with other lands, "such as may be granted to aid in the construction of said road." This was a vested right, and could not be taken away by any subsequent legislation; nor has any attempt been made to take it away.—Code, 1876, § 2910. (3.) The dismissal of the bill on demurrer, without allowing the complainant an opportunity to amend, was error.—*Shackleford v. Bankhead*, 72 Ala. 480; *Little v. Snedecor*, 52 Ala. 167.

NESMITH & SANFORD, and E. A. POWELL, *contra*, cited *Wilks v. Geo. Pac. Railway Co.*, 79 Ala., 180.

STONE, C. J.—The Georgia Pacific Railway Company is a consolidation of five other railroad corporations, two of which had been partially constructed, while the remaining three are not shown to have been commenced. The Greenville, Columbus & Birmingham Railroad Company was incorporated in the State of Mississippi. Its bearing was eastward. It had made some progress towards construction. The Columbus, Fayette & Decatur Railroad Company had its bearing north-eastward. This was an Alabama corporation. These two companies consolidated, merging the former in the latter; and retaining the latter's corporate name.

1888.] OF ALABAMA. 481

[Georgia Pacific Railway Co. v. Wilks.]

Two corporations, one in Georgia and the other in Alabama, were incorporated, each having the same name—the Georgia Pacific Railroad Company. Each pointed westward; one from Atlanta, Georgia, towards the Alabama line, and the other from that line towards Birmingham, Alabama. It is reasonable to suppose that these two roads were intended to run in connection and continuation. These two roads consolidated, and the former sold out to the latter, and thus became an Alabama corporation, retaining the name—the Georgia Pacific Railroad Company.

Another company, incorporated in Alabama as the Alabama Transit Company, had changed its name to that of "Elyton and Aberdeen Railroad Company."—Acts of 1869–70, p. 299. The bearing of this road was westward, from a point near Birmingham, and pointing to Mississippi, north of Columbus. These several roads—the Columbus, Fayette & Decatur, the Elyton & Aberdeen, and the Georgia Pacific—then consolidated into one railroad, and took the corporate name, the Georgia Pacific Railway Company. The agreement to consolidate, and the incorporation pursuant to such agreement, recited that it was "proposed to form a new consolidated company, for the purpose of constructing, owning and operating a continuous line of railroad, from Atlanta, in the State of Georgia, through the States of Alabama and Mississippi, to some point on the Mississippi River in the latter State." This act of consolidated incorporation was perfected about the close of the year 1881, under the act approved March 8, 1876—Sess. Acts, 249; Code of 1876, §§ 1821 *et seq.*—and, *prima facie*, the corporation could exercise only the rights which that act conferred. We consequently held, when this case was formerly before us—79 Ala. 180—that without an express grant of power, the railroad corporation could not acquire or recover an interest in lands, which was neither necessary nor proper in carrying out the purposes of the corporation. We sustained the demurrer to the bill, holding that for want of power in the corporation it could not maintain the suit for specific performance.

In the court below after the reversal, the bill was amended, and the acts of incorporation of some of the constituent roads were set out. Among them is that of the Alabama Transit Company, incorporated in 1869, under the general law, approved December 29, 1868.—Sess. Acts, 462. This act of incorporation was amended by special statute, approved March 3, 1870.—Sess. Acts, 299. Its provisions are, "that

the name and style of the Alabama Transit Company shall be changed to that of the Elyton & Aberdeen Railway Company, and under that corporate name said company may sue and be sued, and shall have all the rights and privileges, and be subject to all the liabilities imposed by the act authorizing the creation and regulation of railroad companies in the State, under which act said Alabama Transit Company was organized."

The general statute of December 29, 1868, under which the Alabama Transit Company was incorporated, conferred on companies incorporated under it power to "acquire, by purchase or gift, any lands in the vicinity of said road, or through which the same may pass, so far as may be deemed convenient or necessary by said company, to secure the right of way, or *such as may be granted to aid in the construction of said road,* and the same to hold or convey in such manner as the directors may prescribe." The italics are our own. Railroads incorporated under this statute evidently had the power to receive, hold and dispose of property, real and personal, given or granted to aid in their construction. The Elyton & Aberdeen Railroad Company had this right and power when it consolidated with, and merged into the Georgia Pacific Railway Company. It had acquired the power under the act of 1868, and the power was emphasized and confirmed by the special statute changing its name. Being a property-right, presumably of pecuniary value, we must infer it was, to some extent, a consideration and moving inducement in the grant and acceptance of the charter. The repeal of part of the act approved December 29, 1868, by the latter enactment approved March 8, 1876—Sess. Acts, 249—did not, and could not, take away this vested right from railroad corporations, which had obtained charters under the older statute before its repeal by the later enactment.—1 Brick. Dig. 402, §§ 8, 9, 14; 3 *Ib.* 158, §§ 38 *et seq.; Thorington v. Gould,* 59 Ala. 461.

In 1871, the Columbus, Fayette & Decatur Railroad Company was also incorporated under the general law of December 29, 1868, and during the same year the legislature of Mississippi granted to the company the corporate right to extend their road to Columbus, in the State of Mississippi. The Alabama charter conferred all the rights guaranteed by the general statute of December 29, 1868, and the statute of Mississippi conferred similar powers on the extension-corporation granted by it.

The act of December 29, 1868, was not entirely repealed by the act of March 8, 1876. Certain subjects covered by the former statute, were not touched by the latter. Among them is the provision for consolidating railroads. The following clause in section 21, act of 1868, was retained, and is yet the law: "And such new corporation shall possess all the rights, powers and franchises conferred upon said two or more corporations."—Code of 1876, § 2008; Code of 1886, § 1583.

It is contended for appellant, that under the several consolidations above set forth, the Georgia Pacific Railway Company had succeeded to all the rights, powers and franchises which had pertained to the two companies, "the Elyton & Aberdeen," and "the Columbus, Fayette & Decatur Railroad Companies," and, as part and parcel of the same, had come into possession of the right to "acquire, by purchase or gift, lands in the vicinity of said road, or through which the same may pass, . . . such as may be granted to aid in the construction of said road."—Act of December 29, 1868, § 15; Sess. Acts, 457. The precise scope of the argument is, that the amendment shows the contents and dates of the said two acts of incorporation, thus showing their power to acquire and hold lands to aid in their construction; and inasmuch as those corporations have become consolidated with the Georgia Pacific Railway Company, that power is reserved and still exists in the latter company, which is but the resultant of the consolidation. This, it is contended, arms the Georgia Pacific Railway Company with the requisite power to recover, hold and convey the lands in controversy.

It is not every consolidation of two or more railroad companies, that transfers to, and confers on the consolidated corporation, "the powers, rights and franchises conferred upon the two or more corporations." To accomplish that result, the lines of the two or more railroads, or contemplated railroads, should bear such relation to each other, or to the general enterprise, as that, when completed, they may admit the passage of burden or passenger cars over two or more of such roads continuously, without break or interruption. Code of 1886, § 1583 (2008).

The amended bill and its exhibits fail to show that the railroads, or any two of them, which were consolidated or merged into the Georgia Pacific Railway Company, were so situated as that the lines of any two or more of them, whether

surveyed or contemplated, would bear such relation to each other, or to the contemplated general enterprise, that their chartered rights could be utilized, in whole or in part, in the construction or extension of a continuous line over which cars could run without break or interruption. Neither the averments of the bill, nor anything in the exhibits, gives us any information on this subject.

We are not able to affirm, from anything shown in the record, that by the consolidation the Georgia Pacific Railway Company succeeded to the right of any other company to acquire, recover, hold, or dispose of real property, or any interest therein, except such as may be necessary for the construction and operation of the railroad. We find no error in the ruling of the chancellor, sustaining the demurrer to the bill.

The chancellor went further in his ruling, and, holding that the bill could not be amended so as to give it equity, he dismissed it. He thus, by an affirmative ruling, denied to complainant all right to amend. We are not able to affirm that the record, on its face, shows that it cannot be amended so as to give it equity, under the principles declared above. We fully concur with the chancellor in sustaining the demurrer to the bill, but hold that he erred in denying to complainant all right of further amendment. The court having declared that "no further amendment can be made, so as to show complainant's capacity to hold said lands," relieved complainant of the duty of asking leave to amend, which would otherwise have rested on him, as a condition of putting the court in error.

Reversed and remanded.

McCLELLAN, J., not sitting, having been of counsel.