# Georgia Pacific Railway Co. *v.* Gaines.

*Bill in Equity for Specific Performance of Contract.*

1.   *Consolidation of railroad companies.*—Under statutory provisions authorizing the . consolidation of two or more railroad corporations (Code, § 1583), which have been of force since December 29th, 1868, the new corporation possesses "all the rights, powers and franchises conferred upon" said original corporations; but this provision only applies to railroads which, when consolidated, will admit the passage of cars continuously, without break or interruption.

2.   *Judicial knowledge; railroads.*—While the courts manifest a growing disposition to extend the area of judicial knowledge, so as to keep pace with the rapid advance of art, science, and general knowledge; yet a prudent limitation of the principle confines it to matters of a general and public nature, or facts of such duration that they have become established as a part of the common knowledge, at least of well informed persons; and it does not authorize this court to assume, as matter of judicial knowledge, that the roads of the several corporations which were consolidated into the Georgia Pacific Railway Company, if completed according to their charters, would have been so located as to admit the passage of cars from one to the other continuously, without break or interruption.

3.   *Decree of dismissal in vacation, on submission in term time.*—When a cause is submitted in term time, for decree on pleadings and proof, the chancellor may render a decree in vacation, and either party may apply for a rehearing at the commencement of the next term (Code, p. 825, Rule No. 80); but, if he dismisses the bill because the complainant has failed to prove his case, it is not necessary that the dismissal should be without prejudice, nor that leave to amend should be granted.

APPEAL from the Chancery Court of Walker.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 9th June, 1884, by the Georgia Pacific Railway Company, a domestic corporation, against George S. Gaines; and sought to enforce the specific performance of a written agreement, by which the defendant bound himself to convey to A. H. Colquit, E. C. Gordon and W. S. Gordon, "their associates and successors," all the coal and iron on and in a certain tract of land, particularly described, containing eighty acres; "together with the right to enter upon the said lands, and prospect for coal and iron, and to mine the same, if they should desire, and also the right of way for roads and railroads across our lands." . This agreement was dated August 19th, 1880, and was signed by the defendant and his wife; and it was in the same words, *mutatis mutandis*, as the contract involved in

the case of *Wilks v. Georgia Pacific Railway Company*, 79 Ala. 180, which is there set out in full. It recited that said Colquit and Gordons, and their associates, "propose to build a railroad from some point on the Tombigbee river, at or near Columbus, Mississippi, or from some point on the South and North Railroad of Alabama, or from some point on the Alabama Great Southern Railroad, or from some point on the Memphis & Charleston Railroad, and running into and through the county of Fayette, or the county of Walker, Alabama, or both;" bound them to begin the work of surveying, building or grading such railroad, within four months from the date of the instrument, and to extend it to the county of Fayette, or the county of Walker, or both, "within three years from this date;" further recited, as the consideration moving to Gaines and wife, the advantages and benefits supposed to accrue to them in the future from the building of the contemplated railroad; and contained another clause, in these words: "It is further especially and expressly understood, that no such deeds to the coal and iron we own shall be made to the parties named in this instrument, unless they shall build the railroad as specified in this instrument; nor, on the other hand, shall the parties who now propose to build this railroad, be liable for any damages if they should fail to build the same."

The original bill alleged that "said Colquit *et al.*, in strict pursuance of the terms and stipulations of said agreement on their part, within less than four months from said 19th day of August, 1880, did begin, or cause to begin, the work of surveying, building and grading said railroad, and did also, within less than three years from said date, extend said railroad, under the name of the Georgia Pacific Railway, from Columbus, Mississippi, on the Tombigbee River, so as to reach said county of Walker, Alabama; and said railroad was completed, equipped and operated, from said city of Columbus, into said county of Walker, by said Colquit *et al.* and their successors, before the expiration of three years from the date of said contract, and has continuously since its completion, and is now, in constant operation and running condition." It was alleged, also, that on the 4th May, 1882, Colquit and his associates sold and transferred said written contract, with all rights accruing under it, for valuable consideration, to the Richmond & Danville Extension Company, a corporation chartered under the laws of Mississippi; and that said last corporation, on the 20th December, 1883, sold

and transferred it, for valuable consideration, to complainant. An amendment of the bill was added, April 6th, 1887, alleging that "said contract was so acquired by complainant as property taken by it for subscription to the capital stock of said Georgia Pacific Railway Company by said R. & D. Extension Company;" and a further amendment, October 20th, 1887, alleging that complainant "had the authority and power, under the laws of Alabama, to acquire said covenant as aforesaid, and now has the authority and power to hold and own the same, and the real estate therein described."

A copy of the complainant's *charter*, as it was called, was made an exhibit to the original bill, being the proceedings which showed its formation by the "consolidation of the Georgia Pacific Railroad Company of Georgia, the Georgia Pacific Railroad Company of Alabama, the Elyton & Aberdeen Railroad Company, the Columbus, Fayette & Decatur Railroad Company, and the Greenville, Columbus & Birmingham Railroad Company;" the agreement of consolidation reciting that it was proposed "to form a new consolidated company, for the purpose of constructing, owning and operating a continuous line of railroad, from Atlanta, in the State of Georgia, through the States of Alabama and Mississippi, to some point on the Mississippi River." On the 26th April, 1888, a further amendment of the bill was made, which stated the incorporation of three of the Alabama companies above named—namely, the Elyton & Aberdeen Railroad Company, the Columbus, Fayette & Decatur Railroad Company, and the Georgia Pacific Railroad Company—referring to the Session Acts where the charters are set out in full; and the amendment added: "Your orator further avers, that said three railroad companies, chartered as aforesaid, contemplated the building of three several railroads under their respective charters, as indicated in said incorporation proceedings, whose lines, when completed, would have admitted the passage of burden or passenger cars over their said contemplated roads continuously, without break or interruption, from the city of Birmingham, or Elyton, in Jefferson county, Alabama, at a point on the Alabama Great Southern Railroad, where the same crosses the Louisville & Nashville (formerly known as the South & North Alabama) Railroad, to Columbus on the Tombigbee River in Mississippi." The several acts incorporating these companies, and other facts connected with their organization, are stated in the opinion of this court in the case of *Wilks v. Georgia*

[Georgia Pacific Railway Co. v. Gaines.]

*Pacific Railway Company* (79 Ala. 180; 86 Ala. 478), and it is not necessary to repeat them here.

On final hearing, on pleadings and proof, the chancellor dismissed the bill; and his decree is here assigned as error. The record does not show when the cause was submitted, except by inference; the note of testimony being dated October 25th, 1888, and the decree, which is dated November 22d, reciting that "this cause, coming on to be heard, was submitted for decree in vacation on pleadings and proof."

McGUIRE & COLLIER, for appellant.—(1.) The proof in this case was taken before the last amendment of the bill was allowed, and therefore may not be as full as the allegations; but it is deemed sufficient, in the absence of contradictory evidence. If necessary, this court will take judicial notice of the routes of these several railroads, and of the fact that their roads, if completed, would form a continuous line. Railroads are public highways of commerce, and are within the domain of judicial knowledge, as well as rivers.—*Gulf, C. & S. F. Railroad Co. v. Texas*, 72 Texas, 404, and authorities there cited. This court, in the case of *Wilks v. Geo. Pac. Railway Co.*, 86 Ala. 480–82, acted on this principle, and took judicial notice of the courses, terminal points and general bearing of these several railroads. (2.) The record does not affirmatively show that the cause was submitted in term time, under consent that a decree might be rendered in vacation.—Code, 825, Rule 80. The dismissal ought to have been without prejudice, or the complainant should have been allowed an opportunity to amend.—*Kingsbury v. Milner*, 69 Ala. 505; *Gilmer v. Walker*, 75 Ala. 220; *Danforth v. Herbert*, 33 Ala. 697.

HEWITT, WALKER & PORTER, *contra*.—There was no equity in the bill until the last amendment was made, and no evidence was adduced in support of its averments.—*Geo. Pac. Railway Co. v. Wilks*, 86 Ala. 479.

SOMERVILLE, J.—The main principle of law which is to govern this case is fully discussed and settled in the case of *The Georgia Pacific Railway Co. v. Wilks*, 86 Ala. 478. We had held on a former appeal that a railroad corporation can not, without an express grant of power, acquire or recover an interest in lands, unless it is made to appear that such property is necessary or proper for carrying out the

purposes for which the corporation was organized.—*Wilks
v. Ga. Pa. Railway Co.*, 79 Ala. 180. On the last appeal
(86 Ala. 478, *supra*), we decided that the appellant corpora-
tion might legally assert the right claimed to the land in
controversy, as the corporate successor of the Elyton & Aber-
deen Railroad Company—one of the several roads consoli-
dated under the name of the Georgia Pacific Railroad Com-
pany—*provided* the case should be brought within the terms
of section 1583 of the present Code of Alabama (1886),
which constituted section 2008 of the Code of 1876. The
Elyton & Aberdeen road had the power to acquire, by pur-
chase or gift, lands in the vicinity of said road, or through
which its route passed, "such as may be granted *to aid in the
construction of said road.*" The lands in controversy are
alleged to belong to that class. It is not, however, every
consolidation of railroads that will confer on the new cor-
poration, in which the old ones are merged, the sum of their
chartered powers. The statute provides on this subject as
follows: "Whenever the lines of any two or more railroads,
or contemplated railroads, chartered under the laws of this
or any other State, which, when completed, may admit the
passage of burden or passenger cars over any two or more of
such roads continuously, without break or interruption, such
companies are authorized, before or after completion, to con-
solidate themselves into a single corporation;" and the pre-
scribed mode of consolidation is fully set out in the statute.
Code, 1886, § 1583. It is only where the consolidated
companies are shown to be of the class specified, and the pro-
visions of the statute as to such merger are substantially
complied with, that the new corporation is authorized to
"possess all the powers, rights and franchises" of its cor-
porate predecessors merged in it.—§ 1583; *Ga. Pac. Rail-
way Co. v. Wilks*, 86 Ala. 478.

The amendment of the bill, so far as its mere allegations
are concerned, perhaps brings this case within the statute.
But there is no proof to sustain these allegations. We can
not know judicially that the original roads, if completed ac-
cording to their charters, would have been so located as "to
admit the passage of burden or passenger cars" from the
one to the other "continuously, without break or interrup-
tion." Some evidence is necessary to enlighten the mind of
the court on this subject. There is a growing disposition,
it is true, for the courts to extend the area of judicial knowl-
edge, so as to keep proper pace with the rapid advance of

[Bangs, Bard & Co. v. Edwards.]

art, science, and general knowledge. But there is a prudent limitation to be put upon this principle, so as to confine it to matters of a general and public nature, or such as do not concern individuals or local communities. The facts must be of such age or duration as to have become established as a part of the common knowledge of well-informed persons, at least.

The failure of proof on this point authorized the dismissal of the bill, aside from other questions raised.

The case was submitted in term time, on pleadings and proof, and the chancellor had full authority to decide it in vacation by final decree on the merits—either party aggrieved having the power to apply to the chancellor for a re-hearing by the second day of the next ensuing term of his court, following the vacation.—Rule of Prac. No. 80; Code, 1886, p. 825. It is not a case where the proof is sufficient and the allegations insufficient, but the reverse. No amendment of the pleadings is needed, and it is too late to correct the deficiency of proof.—*Hooper v. Strahan*, 71 Ala. 75; *Gilmer v. Morris*, 80 Ala. 78; *Gilmer v. Wallace*, 75 Ala. 220.

The decree of the chancellor is free from error, and must be affirmed.

