[Davis *et al.* v. Williams *et al.*]

# Davis *et al.* *v.* Williams *et al.*

### Bill for Specific Performance.

1. *Agreements with construction company by land owners; when binding.*—Where a construction company in a contract with a railroad company, whose road it contracts to build, stipulates as a part of the consideration to make the contract that, it would be permitted to "receive conveyances of real estate from the owners on the line of said road, either as a donation by said owners or in consideration of an agreement on the part of the construction company to build the railroad through or near the lands of the grantors," such agreement when made by the construction company is equivalent to an agreement with the railroad company itself, and is in equity binding on the contracting parties—it not being against public policy.

2. *Same; transfer of legal.*—The construction company may transfer its contract made with the land owner in regard to locating the railroad, to third parties, after it has performed its part of the contract.

3. *Transferee of such contract; when he has perfect equity.*—After the completion of its part of the contract by the construction company, the transferees of its agreement with land owners have a perfect equity in the land agreed to be conveyed; the compliance on the one part constituting the consideration for the promise on the other.

4. *Champerty; what is not.*—Where a construction company has acquired a perfect equity to an interest in land by contract with the owners, and transfers the contract which gives the equity, and there is no question of adverse possession in a third party at the time of the transfer, there can be nothing of champerty or maintenance in an effort made by bill in equity by the transferrees to convert their equitable title into a legal one.

5. *Limitation to action in equity.*—It would seem that no lapse of time short of ten years will bar an action in equity in this State to recover land held under an equitable title.

6. *Transferror not necessary party to a bill by transferree.*—The parties composing the construction company having transferred and conveyed their rights under the contract, are not necessary parties to a bill filed by their transferees; nor was

[Davis *et al.* v. Williams *et al.*]

a demand by the construction company before the transfer and conveyance by them to complainants, necessary.

7. *Contract binding on wife; when.*—A contract with a husband and wife affecting the land of the wife is binding on her.

8. *Joinder in demurrer; effect of.*—A party who joins in a demurrer in the lower court and in assignments of error in this court on account of the ruling on the demurrer, cannot be heard to insist that his title to land in controversy is not affected—there should have been a separate assignment as to him to make such insistence available.

APPEAL from the Chancery Court of Macon.
Heard before the Hon. J. N. WILLIAMS.
The facts are stated in the opinion.

S. B. PAINE, for appellants.—The contract with the construction company was against public policy.—*Bestor v. Wathen*, 60 Ill. 138; *Fuller v. Dane*, 18 Pick. 472; *Holloway v. Patterson*, 5 Or. 177. (2). The contract was unilateral and consequently void for want of mutuality. It was not transferable. (3). The following other authorities are cited.—32 Ala. 44; 37 Ala. 612; *Blythe v. Dargan*, 68 Ala. 370.

TOMPKINS & TROY, *contra.*—There is no ground to urge want of mutuality or of consideration.—*Wilkes v. G. P. R. R. Co.*, 79 Ala. 108. (2). Transferees of an agreement can enforce specific performance where the original parties could.—1 Brick. Dig., p. 694, Sec. 799. (3). Contract was not against public policy.—41 Ia. 292; *McLure v. Mo. River etc. R. R. Co.*, 9 Kan. 373; 103 Ind. 520; 12 B. Monroe 218; *Taggart v. W. Md. R. R. Co.*, 24 Mr. 563; *Chapman v. R. R. Co.*, 6 Ohio St. 120.

McCLELLAN, C. J.—On January 5th, 1891, the Georgia & Alabama Construction Company, a partnership, and R. T. and Mary C. Davis entered into the following contract:

"We, R. T. Davis and M. C. Davis, do hereby agree that if the Georgia & Alabama Construction Company will build the Savannah, Americus & Montgomery Railroad within one-half mile of our residence on either side of the dwelling and storehouse occupied at present by

us and build a depot on the said railroad within one mile of our residence at any place along the line of said railroad that is most suitable to themselves, we hereby agree to give the Georgia and Alabama Construction Company one-half interest in forty acres of land which may be laid off in lots and streets. The lots must commence at a point near the railroad and on the big road leading from Union Springs to Tuskegee, Alabama, and known as the Union Springs and Tuskegee dirt road. Just as soon as the railroad is built and the depot established and the train makes a trip through from our place to Montgomery, Alabama, we will make a warranty title to one-half interest in (40) acres of land through which the railroad will run, Nos. as follows: Sections 34 and 35, Township 15, Range 23, and it makes no difference to us where the railroad enters our land, we will deed one-half interest in forty acres of land along said railroad to the Georgia & Alabama Construction Company at any point on Section 34 or 35, Township 15, Range 23, that they may select. We further agree to do all in our power to aid the Georgia & Alabama Construction Company, and if the depot ground is selected for a depot on our land, we will also deed to them sufficient grounds for that purpose. Now, everything being fully understood, having been read by J. T. Adams, the company's agent, and agreed to by ourselves and Mr. Adams we sign the paper and consider it in full force and effect."

At that time said Construction Co. was under a contract with the Savannah, Americus & Montgomery Railway Company, a corporation, for the building of a railroad for said corporation from Americus, Georgia, to Montgomery, Alabama. One of the provisions of said contract, constituting in part the consideration inducing the Construction Company to enter into it, was that said company "should be permitted to receive conveyances of real estate from the owners thereof on the line of said railroad, either as a donation by said owners or in consideration of an agreement on the part of said Construction Company to build said railroad through or near the lands of the grantors." The Construction Company built the railroad through the lands and located and built a depot on the lands of the said R. T. and Mary C.

Davis in accordance with the stipulations of the contract above set out, and having completed said road, and run trains over it, to Montgomery, Alabama, the company selected, also in accordance with the contract, the forty acres of land, a one-half interest in which Davis and his wife were by its terms to convey to the company. In 1896 the members of the partnership, the said Construc-tion Company, and their several wives executed an as-signment of said contract of January 5th, 1891, to J. L. Williams and George E. Salter. Meantime R. T. Davis had died, and the title to said land had become vested in his wife, the said Mary C. Davis, and his son, Hubert T. Davis, the former owning an undivided two-thirds and the latter an undivided one-third interest therein. The assignees of the contract demanded of the said Mary C. and Hubert T. Davis that they convey to them an undi-vided one-half interest in the forty acres of land selected and located by their assignors; but they refused to do so, and repudiated the contract.

On and setting forth the foregoing facts said assignees Williams and Salter on March 12, 1897, filed their bill of complaint against said Mary C. and Hubert T. Davis, describe the land involved therein, and pray that the respondents be decreed to execute to complainants a proper deed conveying to them a one-half undivided in-terest in the land described. The respondents jointly demurred to the bill. The demurrer was overruled. They appeal to this court from the decree in that behalf, and jointly assign errors here.

It is insisted by the demurrer that the contract sought to be enforced is against public policy and void, or, if not so, at least that it is of such an evil character or ten-dency that a court of conscience should not decree its specific performance. The argument is that it was the duty of the Construction Company to the public to locate and build the railroad and depot wholly in the interest of public convenience and accommodation, and that the contract in question tended directly to induce a breach of this duty to the inconvenience and injury of the pub-lic, etc., etc., and hence was against public policy. The authorities relied on to support this proposition fail to do so. They hold, and most justly, that such contracts

35

[Davis *et al.* v. Williams *et al* ]

made with officers of a railway corporation for their personal advantage tend to induce them to a breach of their duty to locate the railroad to the best interest of the company and of the public and hence are against public policy. But that is not the case presented by the bill. Here the contract was made with the Construction Company which built the road under an agreement with the railway corporation by which the former was allowed to make such contracts as a part of the consideration moving to them for locating and building the road. It is therefore the same to all legal intents and purposes as if it had been made with the railway company itself. And it is well settled that such contracts made with the railway company—"contracts by which some benefit is secured to the corporation itself by the choice of a particular location, so long as they do not infrings the rights of the public"—are valid, and, when performed on the part of the company, are binding on the other party. Here the corporation is benefited in that its authorization to the Construction Company to make this contract went to reduce the cost to it of building the road. And there is no presumption that any right of the public is infringed. Thousands of such contracts have been made in this State—indeed it is rather the rule than otherwise to make donations and subscriptions to railway enterprises conditioned upon the location of the road to a particular place or along a specified route— and their validity has not only never been questioned, but has often been either expressly or impliedly sustained.—*Ga. Pac. R'y Co. v. Wilks,* 86 Ala. 478; *Hall v. Sims,* 106 Ala. 561; *Hass v. Hall & Farley,* 111 Ala. 442; *Garner v. Hall & Farley,* (MSS.) ; 3 Elliott on Railways, § 928; Greenhood on Public Policy, p. 321; *Railroad Co. v. Dawson,* 62 Tex. 260; *Railway Co. v. Darkes,* 103 Ind. 520; *Taggart v. Railroad Co.,* 24 Md. 563; *Railroad Co. v. Spofford,* 41 Iowa 292.

Nor is such contract objectionable as being unilateral or for want of consideration. When the condition has been complied with—when the road has been located and built as specified in the writing—the contract is as binding as if it had been originally absolute and unconditional; and compliance on the one part constitutes the

consideration for the promise on the other.—*Taggort v. Railroad Co., supra; Railway Co. v. Derkes, supra.*

The bill is not open to the objection taken by the demurrer for champerty or maintenance. On its averments the Construction Company at and before the time of their transfer and conveyance to complainants had a perfect equity in and to a half interest in the land described. It being the duty of respondents to convey that interest to the company, it is not to be assumed that they had repudiated the contract or held the whole land otherwise than in recognition of the company's equity. There was no question of adverse possession in a third party at the time of the transfer. The company, having this equity, this equitable title, and having conveyed it to complainants, there can be nothing of maintenance or champerty in the latter's present effort to convert their equitable into a legal title. The effort is simply to conserve the interest they have purchased, solely for their own benefit and at their own charge.—2 Story Eq. Jur. § 1050.

The cause of action propounded here is analogous to a right of recovery in ejectment at law: it is a suit in equity to recover certain land held under an equitable title. It would seem that no lapse of time short of ten years would bar the action; and whether so or not, it is clear, we think, that the lapse of time after the right accrued and before bill filed was not sufficient to render the demand stale.—*Ashurst v. Peck*, 101 Ala. 499, s. c. 108 Ala. 429.

Hannon and others, who composed the Construction Company, and transferred and conveyed their title and rights under this contract to complainants are no more necessary parties to this bill than had their title been a legal one, and the complainants as their grantees were suing in ejectment at law. They are without interest in the suit and could not have been made parties to it.

A demand by the Construction Company before the transfer and conveyance by them to complainants was obviously unnecessary: with or without such demand they had a perfect equity, and the right to convey it to complainants.

It is immaterial that the land may have belonged to Mary C. Davis. If it did, the contract, being joined in by her husband, is binding on her.

It is also of no consequence as the case is now presented whether the land came to Mary C. Davis through R. T. Davis. However the title accrued it is affected by the contract. If Hubert T. Davis' title is not so affected, the fact is of no avail here as he joins both in the demurrer below and in the assignment of error here. The demurrer not being good as to one of the demurrants was properly overruled; and if there had been error as to him in the decree overruling the demurrer it could be availed of here only upon a separate assignment as to him.

Affirmed.