# Wimbish *v.* The Montgomery Mutual Building and Loan Association.

*Bill in Equity to enjoin Sale under Power in Mortgage, and to have Mortgage declared Void.*

1. *Under contract for the purchase of lands, the vendee is the equitable owner.*—When a valid contract for the purchase of lands has been made, the vendor covenanting to make title on the payment of the purchase-

[Wimbish v. Montgomery Mutual Building & Loan Association.]

money at a future day, a court of equity, acting on its maxim of treating that as done, which the parties contemplate shall be done in the final execution and consummation of the contract, regards, for most purposes, the contract as specifically executed, and considers the vendor the owner of the purchase-money, and the vendee as the equitable owner of the land, attaching to the land a trust in favor of the vendee, which not only binds the land while the legal estate remains in the vendor, but which also binds every one claiming under him, except a *bona fide* purchaser without notice.

2. *At common law, wife had capacity to take from husband through purchase by him in her name.*—At common law, the wife had full capacity to take from the husband through a purchase made by him in her name. By such a purchase the maxim of the common law that husband and wife, because of their legal unity, could not contract with each other, and of consequence, that the husband could not directly convey to the wife property, real or personal, was not offended, because of the intervention of a third person as the grantor or donor, through and from whose conveyance, the estate or interest was derived, and by which the property was vested in the wife.

3. *When a court of equity will enforce the interest of a cestui que trust growing out of a voluntary agreement.*—While a court of equity will not, as a general rule, aid a mere volunteer in the enforcement of an executory agreement, nor upon such an agreement, unsupported by a valuable consideration, will create a trust, and establish the relation of trustee and *cestui que trust;* yet, if the trust is actually created, is effectually constituted, it is irrevocable, and a court of equity will enforce the equitable interest of the *cestui que trust.*

4. *Validity of contract not affected by fact that consideration moves from one, while its promises and obligations are made to another.*—The validity of a contract is not affected, because the consideration may not have moved from the party to whom the obligations of the contract are extended, and in whom the right of enforcement resides. It is not uncommon, that the consideration for a contract moves from one person, while its promises and obligations are made to another, and the validity of such contracts, when accepted by the party to whom the promise or obligation is made, can not be questioned.

5. *When a party is a mala fide purchaser.*—The settled doctrine of a court of equity is, "that the person who purchased an estate (although for a valuable consideration), after notice of a prior equitable right, makes himself a *mala fide* purchaser, and will not be enabled, by getting in the legal estate, to defeat such prior equitable interest, but will be held a trustee for the benefit of the person whose right he sought to defeat."

6. *Purchase of real estate by husband in the wife's name; interest therein.*—If on the purchase of land by the husband, he take a bond for title in the wife's name, whereby the vendor covenants on payment of the purchase-money at a future day, to make title to her, she is there by invested with an equity in the land, which is irrevocable and indestructible by any subsequent act of the husband, and which, on payment of the purchase-money, becomes perfect and entitles her to a conveyance of the legal title. And if, on payment of the purchase-money by the husband, though with his own funds, he deliver up the bond for title, and at his request, but without the wife's knowledge or assent, the vendor convey the legal estate to a third party, who, in turn, conveys it to another in mortgage to secure a loan then made, nominally to the mortgagor, but, in fact, for the use and benefit of the husband, all parties having full notice of the wife's equity, such mortgagee, although a purchaser for a valuable consideration, takes the legal title *mala fide,* and will not be allowed thereby to defeat the wife's prior equitable estate.

7. *Statutory separate estate of the wife.*—Where the husband purchased

VOL. LXIX.

[Wimbish v. Montgomery Mutual Building & Loan Association.]

real estate and took bond for title in his wife's name, whereby the vendor covenanted to convey to her the legal title on payment of the purchase-money, the equity of the wife arising from such covenant is her statutory separate estate.

APPEAL from Montgomery Chancery Court.
Heard before Hon. H. AUSTILL.

On the 21st July, 1873, Eveline T. Wimbish, a married woman, by her next friend, filed the bill in this cause against Miles M. Wimbish, her husband, and Henry C. Moses, M. P. LeGrand and the Montgomery Mutual Building and Loan Association, a body corporate under the laws of this State. The purpose of the bill is to have delivered up and cancelled a deed executed by LeGrand to Moses conveying a lot of land in the city of Montgomery, which complainant's husband had, prior to the execution of said deed, purchased from LeGrand in her name, taking bond for title, whereby LeGrand covenanted to convey to her the lot upon the payment of the purchase-money therefor, and to compel LeGrand to convey to her said lot according to the terms of the bond for title; to perpetually enjoin the Montgomery Mutual Building and Loan Association from selling said lot under a power of sale contained in a mortgage executed by Moses to the association, and from taking any steps looking to the foreclosure thereof, and to have said mortgage declared void as against the complainant. The material facts alleged in the bill and shown by the evidence are stated in the opinion. On the final hearing, had upon the pleadings and proof, the chancellor was of the opinion that the complainant was not entitled to relief, and caused a decree to be entered dissolving an injunction which had been issued upon the filing of the bill, and dismissing the bill; and this decree is here assigned as error.

WATTS & SONS, D. S. TROY and T. M. ARRINGTON, for appellant

CLOPTON, HERBERT & CHAMBERS, contra.

BRICKELL, C. J.—We do not deem it necessary to consider any of the questions of fact which are matter of fair controversy. The rights of the parties seem capable of solution and determination upon facts in reference to which there is no real conflict in the evidence. These facts are, that in 1871, the husband of the appellant contracted with one LeGrand, who was seized in fee of the premises in controversy, for the purchase of the premises at the price of twelve hundred and fifty dollars, payable in two equal installments, at (most probably) three

37

and six months from the day of the purchase. For these installments the husband made his promissory notes payable to LeGrand, who executed a bond by which he covenanted that on the payment of the notes, he would make to the appellant a title to the premises in fee simple. The notes were paid by the husband at or about the time the last one fell due; and soon thereafter, at the request of the husband, LeGrand conveyed the premises to the appellee, Moses, without the knowledge or consent of the appellant, and the bond for title was surrendered to him. Moses conveyed the premises to the Building and Loan Association by mortgage, as it was contemplated he should, by the agreement between him and the husband, when LeGrand executed the conveyance; the purpose of this transaction being to enable the husband to borrow money. Moses and the Building and Loan Association had notice that the covenant of the bond was for the making of title to the appellant, when the coveyance was taken by Moses, and when the mortgage was executed.

The general principle prevailing in a court of equity is, that from the time a valid contract for the purchase of lands is entered into, the vendor, as to the land, becomes a trustee for the vendee, and as to the purchase-money, the vendee becomes a trustee for the vendor. When, as in the present case, the agreement is, in its legal nature, executory, the vendor covenanting to make title on the payment of the purchase-money at a future day, a court of equity, pursuing its own maxim of looking upon, or treating that as done, which ought to have been done, or which the parties contemplate shall be done in the final execution and consummation of the contract, for most purposes, regards the contract as specifically executed. The vendee is the equitable owner of the land—the vendor is the owner of the purchase-money. To the land a trust attaches; of it the vendor is seized for the use of the vendee. The trust binds the land, while the legal estate remains in the vendor; and it binds the heir or devisee succeeding to it, and every one claiming under the vendor, with the exception of a *bona fide* purchaser without notice.—1 Story's Eq. §§ 789–90. As land the vendee may convey or devise it; and as land it is descendible to his heirs, who may in a court of equity compel a specific execution of the contract. If there is not a stipulation to the contrary, the contract of itself operates a transmutation to the vendee of the possession, entitling him to the right of entry and of enjoyment.—*Reid v. Davis*, 4 Ala. 83.

In this relation, with these corresponding rights, LeGrand and Wimbish would have stood, if the penalty of the bond for title had been payable to Wimbish, and the covenants of the bond had been for the making of title to him. Then, if

[Wimbish v. Montgomery Mutual Building & Loan Association.].

he had made sale of the lands, or if he had made an assignment of the bond, the effect of the sale, or of the assignment, would have been a transfer of the equity acquired by the contract of purchase, placing the vendee, or the assignee, in respect to the lands, in the same relation as he was at the time of the sale or assignment—entitling him to resort to a court of equity, if necessary to perfect the title.—*Brown v. Chambers,* · 12 Ala. 697. The bond for title, in penalty payable to the appellant, and the covenant being for the making of title to her on the payment of the purchase-money, her rights are at least equal to the rights of a purchaser from, or an assignee of the husband, and are the better protected, because of them, from the bond, LeGrand, the vendor, had full knowledge and notice.

It can not be doubted that at common law, the wife had full capacity to take from the husband through a purchase made by him in her name. The purchase,'if induced only by the meritorious consideration of making a provision for the wife—if not founded on a valuable consideration moving from her, or from a third person for her benefit, was presumed to have been intended as a gift and advancement to her, unless evidence of a different intention 'was adduced.—1 Bright on Hus. and Wife, 32. And it is not important, whether the estate passing to the wife by the purchase, is legal or equitable—an absolute fee, or a mere right in equity.—*Raymond v. Pritchard,* 24 Ind. 318; *Thompson v. Thompson,* 1 Yerger 97. The maxim of the common law that husband and wife, because of their legal unity, could not contract with each other, and of consequence that the husband could not directly convey to the wife property, real or personal, was not offended. There was the intervention of a third person as the grantor or donor, through and from whose conveyance, the estate or interest was derived. This intervention removed any difficulty springing from the legal unity between husband and wife, and the conveyance vested the property in the wife.—1 Bish. Mar. Women, §§ 712–715.

This maxim of the common law was accepted in a court of equity with many qualifications, and in a very limited sense. That court was, and is in the habit of lending its aid for the enforcement of many agreements between husband and wife, which in a court of law would be esteemed void. A voluntary agreement or covenant of the husband, founded on the meritorious consideration of making provision for a wife, as between the parties, the court will aid in enforcing, as if it were founded on a valuable consideration.—1 Leading Cases in Equity, (4th Amer. Ed.) 425; *Minturn v. Seymour,* 4 Johns. Ch. 498; *Dennison v. Goehring,* 7 Penn. St. 175. And while the court will not, as a general rule, aid a mere volunteer in the enforcement of an executory agreement, or upon such an agreement, not

[Wimbish v. Montgomery Mutual Building & Loan Association.]

supported by a valuable consideration, will not create a trust and establish the relation of trustee and *cestui que trust*, yet, if the trust is actually created, is effectually constituted, it is irrevocable, and a court of equity will enforce the equitable interest of the *cestui que trust.*—1 Lead. Eq. Cases, 382, *et seq.*; 1 Perry on Trusts, § 96, *et seq.* As to the husband, in the present case, the trust was executed—not executory. No further act or declaration on his part was necessary to invest the wife with the equity in the lands, created by the contract of purchase. In the contemplation of a court of equity, she was seized of the lands, and for her use, and as a trustee, LeGrand had the legal estate, with which he was bound to invest her when the purchase-money was paid. That the purchase-money was payable by the husband, can not change the character of the right and equity of the wife. The validity of a contract is not affected, because the consideration may not have moved from the party to whom the obligations of the contract are extended, and in whom the right of enforcement resides. It is not uncommon, that the consideration for a contract moves from one person, while its promises and obligations are made to another, and the validity of such contracts, when accepted by the party to whom the promise or obligation is made, can not be questioned. Now, assuming that it is not shown by a preponderance of the evidence, that the husband made the purchases of the premises in controversy for the wife, intending to pay for them with moneys, her separate property, in fact merely lending his credit, and did not pay the purchase-money with such moneys, but with his own money, there can be no doubt the wife was invested with the equity in the lands—an equity becoming perfect, when the purchase-money was paid, entitling her to demand a conveyance to herself of the legal estate. The equity was irrevocable and indestructible by any act of the husband subsequent to its creation. If, by any contrivance, the husband had become clothed with the legal estate, he would have been a mere trustee for the wife.—*Thompson v. Thompson*, 1 Yerger, 97; *Raymond v. Pritchard*, 24 Ind. 318. And having the legal estate, all claiming through him with notice of the equities of the wife, would have been subject to these equities, and would have held the legal estate in trust for her. With full notice of the equity of the wife, Moses entered into the transactions with the husband, and accepted from LeGrand a conveyance of the legal estate. Equities would be of little value, and would be disappointed and defeated by mere contrivance, if he were not held a trustee of the estate for the wife. Nor can there be any doubt, that of the equity the Building and Loan Association had full notice when they made the loan nominally to Moses, but, as they knew, really to the husband,

[Renfro's Adm'x v. Hughes.]

and accepted the mortgage from Moses. The settled doctrine of a court of equity is, as announced by Lord HARDWICKE, in *Le Neve v. Le Neve*, (2 Lead. Eq. Cases, 109), "*that the person who purchased an estate (although for a valuable consideration), after notice of a prior equitable right, makes himself a mala fide purchaser, and will not be enabled, by getting in the legal estate, to defeat such prior equitable interest,* but will be held a trustee for the benefit of the person whose right he sought to defeat."

The equity of the wife arising from the covenant of LeGrand to make to her a conveyance of the legal estate, is property accruing to her after her marriage, and becomes her statutory separate estate. If to her LeGrand had made the conveyance, without words which would have excluded the common law marital rights of the husband, the covenant of the bond would have been performed, and the legal estate would have been the statutory, not the equitable estate of the wife. A court of equity, for most purposes, treats the covenant as if it had been specifically executed. So regarding it, the estate accrues to the wife as her statutory separate estate.

It results from these views, that the decree of the chancellor is erroneous and must be reversed, and a decree will be here rendered granting the appellant appropriate relief.

STONE, J., not sitting.