# Morris *v.* Hanson.

*Bill in Equity by Children, to compel Conveyance by Vendor of Lands bought by Husband for Wife.*

1. *Purchase of lands by husband, in name of wife; right of children to enforce conveyance.*—When the husband purchases lands for the benefit of his wife, taking the obligation of the vendor to make title to her, though paying the purchase-money with his own funds; and, after paying the purchase-money, deposits the written obligation with the vendor, as security for a new loan to himself; the wife (and after her death her children) may compel a conveyance of the legal title by the vendor.

APPEAL from the Chancery Court at Montgomery.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed by Bessie Hanson and others, children of M. M. Copeland and Margaret A. Copeland, his wife, against Josiah Morris and the said M. M. Copeland; and sought to obtain a conveyance of the legal title to certain lots lying near the city of Montgomery, which said Morris had sold to said M. M. Copeland, and to enjoin a threatened action at law by Morris to recover the possession of the lots. The contract of sale was made in December, 1870, and Copeland was placed in possession under it. The stipulated price was $2,200, and titles were to be made when the purchase-money was paid. The deposition of M. M. Copeland was taken on the part of the complainants, and that of Morris on his own behalf; and their testimony was contradictory as to several material facts. Five hundred dollars of the purchase-money was paid on May 29th, 1871, for which a receipt was given by Morris, in these words: "Received of Mrs. M. A. Copeland five hundred dollars, in part payment for lots running from Court to Perry street, between the property now owned by her and Mrs. Sears' property, which property I sold her last December for $2,200." Copeland testified that he bought the property for his wife, but paid the $500 with his own money; that he paid the balance (about $1,700) in July, 1872, taking a receipt for the same; that he afterwards gave this receipt back to Morris, to be held by him as collateral security for a loan, or accommodation acceptance, of over $1,000; and that the receipt "ran about as follows," according to his best recollection: "Received of Mrs. M. A. Copeland $1,700, balance due on a certain lot purchased in December, 1870, the titles of which I promise to

[Morris v. Hanson.]

make on the return of Mrs. M. from California." As to the circumstances attending the return of the receipt to Morris, the testimony of Copeland was in these words; "In October, 1872, Mr. Morris accepted a paper for me to raise about $1,000. When the paper fell due, I was unable to pay it. After negotiating the loan, and before it fell due, I handed back the receipt for $1,700 to him, to be held as collateral security for said loan. In October, 1874, I paid the interest and part of the principal, which reduced the debt to $1,000, took up the original paper on which the loan was negotiated, and gave him my due-bill for $1,000 exactly, leaving the said receipt still in his hands." He further testified, that these two receipts were the only writings ever executed between them.

Morris stated, in his original answer, that the contract between him and Copeland was verbal only; that when the $500 was paid, in May, 1871, "Copeland stated that he desired the titles made to his wife when the purchase-money was fully paid;" that $100 was afterwards paid, as shown by his books, on the 16th April, 1872, and $290 on the 19th July, 1872, amounting in all to $890; and he denied that the purchase-money was ever paid, "except as above stated," and denied that he "ever gave to Mrs. M. A. Copeland any receipt showing that he had received the full amount of the purchase-money, or any obligation or promise to make titles to her." An amended answer was afterwards filed by Morris, alleging that the original contract was in writing, "the substance of which was, that said Morris should convey the said premises to said Copeland upon the payment of the purchase-money;" that afterwards, "before payment of said purchase-money in full, said Copeland applied to respondent for a loan of $1,000 on the security of said property, which respondent refused to make;" that one John B. Gay then agreed to lend the money to Copeland, "if respondent would agree to pay the same upon the failure of said Copeland to do so;" that respondent agreed to do this, and thereupon said Copeland, in order to secure him, returned said original agreement, upon which was indorsed words to the effect, that the titles were not to be made until said purchase-money and said loan were paid to him; and respondent avers that said Copeland has never paid the same." Said Morris stated, in his deposition, that he executed to Copeland, at or about the time the contract was made between them, a writing which stated the agreed price of the property, and that titles were to be made when the purchase-money was paid in full; that after the partial payments had been made, Copeland claimed a balance of some $1,500 as the profit due to him on a contract between them for the purchase and sale of gold; that respondent, while denying that he had ever made any such

contract, expressed his willingness to allow the claim in payment of the balance due for the purchase-money of the lots; that the matter being thus settled between them, he indorsed a memorandum on the original contract, "in substance" in these words: "M. M. Copeland having settled with me for this lot, I am to make titles to said lot to Mrs. Copeland;" that this was the paper afterwards returned to him by Copeland, as collateral security for the debt to Gay, and that he had not been able to find it after diligent search.

Mrs. Copeland died on the 19th February, 1878, and the bill was filed on the 2d June, 1884.

On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainants; and his decree is now assigned as error.

SAYRE & GRAVES, for the appellant, cited *Crompton v. Vasser*, 19 Ala. 266; *Ellison v. Ellison*, 6 Vesey, 656; *Gannard v. Eslava*, 20 Ala. 746; *Antrobus v. Smith*, 12 Vesey, 39; *Early & Lane v. Owens*, 68 Ala. 178; 2 Story's Equity, § 1196; 2 Spence's Equity, 58; 1 Sugd. Powers, 464.

GUNTER & BLAKEY, *contra*, cited *Wimbish v. B. & L. Association*, 69 Ala. 575; 1 Perry on Trusts, § 98; *Fortescue v. Barnett*, 3 My. & K. 36.

STONE, C. J.—If Bessie Hanson is a married woman, it is not shown in the pleadings in this cause. The question not being raised in the court below, would scarcely be considered here, even if the record brought it to our notice.

The case of *Wimbish v. Building & Loan Association*, 69 Ala. 575, bears evidence of very thoughtful study. Its views are fortified and sustained by the current of modern rulings. Perry on Trusts, § 98; 1 Lead. Cas. in Eq., 4th ed., part 1, pp. 425 *et seq.* We do not feel at liberty to depart from it. The facts of the present case, in the view most favorable to appellant, bring it within the influence of that decision, and the decree of the chancellor must be affirmed.