# Ashurst v. Peck et al.

*Bill in Equity to enforce Specific Performance of a Contract for the Sale of Land.*

1. *Maintenance; subordinate possession by vendor.*—Where one, who is in possession of lands under a contract of purchase, executes a mortgage thereon, a conveyance of said lands under a foreclosure sale as provided in said mortgage, and a deed from such purchaser to an-other are not void for maintenance as against the original owner, who, after the death of his vendee under the contract of sale, took possess-ion of the lands and received the rents therefrom ; the possession of the lands and the pernancy of the rents by the original owner and vendor being presumed to be subordinate to the equitable title of his vendee's mortgagee and those claiming under him.

2. *Bill to enforce specific performance; failure to aver when purchase money payable.*—When a contract of purchase stipulates that the ven-dor will convey the lands when the "vendee pays or causes to be paid" the purchase money, and that the contract was based on a note then executed by the vendee and another note he would thereafter execute for the purchase money, a bill filed by one claiming under the vendee against the administratrix of the vendor to enforce the specific

[Ashurst v. Peck et al.]

performance of said contract, which avers that complainant does not know whether the notes were ever executed, and makes no other averment as to when the contract was to be performed by the vendee paying the purchase money, is not open to demurrer on the ground, that it fails to show when the purchase money was payable, since the complainant could assume that the contract was to be performed by the vendee within a reasonable time.

3. *Same; insufficient demurrer.*—Although in such a bill, an averment that the "complainant does not know whether the notes were ever executed or not" is insufficient to excuse a more specific averment of the terms of a contract, in that it does not show that complainant had done what he ought to have done to inform himself in the premises, a demurrer on the ground that "the bill fails to describe the notes alleged to have been executed for the purchase money, or to show when same was due," is not sufficient to raise this objection.

4. *Bill in equity to specifically enforce a contract; stale demand.*—A demurrer to a bill, filed by one claiming under the vendee in a contract of purchase to enforce the specific performance of said contract, on the ground that the "alleged right of complainant is stale," is based on the ground that a demand or claim by the complainant has not been asserted for so long a time that the court is without equity to enforce it; and does not raise, as an objection to the maintenance of the bill, that the complainant has so acquiesced in the assertion by the vendor and his personal representative of possession of the land, and a retention by them of the rents and profits, that a court of equity, in the discretionary exercise of its jurisdiction to enforce an executory contract, will not lend its aid to the enforcement of the contract involved in such suit.

5. *Bill to enforce the specific performance of a contract of sale; tender of deed before filing bill not necessary.*—It is not essential to the maintenance of a bill for the specific performance of a contract of sale, that the complainant, who is the vendee, should offer to perform or tender a deed before filing the bill; a failure to do so affects only the question of costs.

6. *Vendor in possession accountable for rents and profits.*—A vendor of land, who has retained title and taken possession, and has bound himself to convey on payment of the purchase money, is accountable to the vendee or his assignee for rents and profits arising from said lands, to the same extent that a mortgagee in possession is accountable to the mortgagor.

APPEAL from the Chancery Court of Montgomery.

HEARD before the Hon. JERE N. WILLIAMS.

The bill in this case was filed on June 11, 1892, by the appellant, James V. Ashurst, against the appellees, and prayed for the enforcement and the specific performance of a contract

[Ashurst v. Peck et al.]

of purchase. The averments of the bill are sufficiently stated in the opinion. The defendant demurred to the bill on the following grounds : "1st. Bill and exhibit thereto show that the relation of mortgagor and mortgagee did not exist between Charles F. Ashurst and A. B. Peck, but that the relation was that of vendor and vendee. 2d. Said complainant on the facts stated in the bill has no right to redeem. 3d. The exhibits attached to the bill disclose an unconditional executory contract of sale from A. B. Peck to Chas F. Ashurst, and said transaction can not be held a mortgage at the instance of the complainant. 4th. And these defendants demur specially to so much of said bill as seeks to have an accounting of the rents and profits of said lands, or the use or occupation thereof, and for grounds of demurrer assign the same grounds, severally and separately as are above assigned to the whole bill. 5th. The bill, as one for specific performance, is insufficient in showing that the complainant had ever offered to perform his part of the contract. 6th. The bill fails to show that any tender was ever made to defendant's administrator of the amount due. 7th. The bill fails to show that any deed was ever tendered to either of the defendants for execution. 8th. That it appears by the bill of complaint, that at the time the complainant acquired the interest in the lands upon which he predicates his bill, said lands were adversely held. 9th. The bill fails to describe the notes alleged to have been executed for the purchase money, or to show when same were due. 10th. The equity of redemption was cut off by the foreclosure of the mortgage, and the statutory right of redemption was barred before the bill was filed. 11th. The alleged right of complainant is stale. 12th. The complainant's right to redeem is barred by the statute of two years."

Upon the submission of the cause upon the demurrer, the chancellor sustained it ; and his decree in this behalf is here assigned as error, on the present appeal by the complainant.

BRICKELL, SEMPLE & GUNTER, for appellant.—The relation existing between A. B. Peck and Chas. F. Ashurst resulting from the agreement of sale was that of vendor and vendee.—*Micou v. Ashurst*, 55 Ala. 607 ; *Spies v.*

[Ashurst v. Peck et al.]

*Price*, 91 Ala. 166, 8 So. Rep. 405; *Moseley ·v. Moseley*, 86 Ala. 289, 5 So. Rep. 732.

When, as in this case, the vendor stipulates to make title on the payments of the purchase money at a future day, the court pursuing its own maxim of looking upon and treating that as done, which ought to have been done, or which the parties contemplate shall be done in the final execution and consummation of the contract, ·for most purposes regards the contract as specifically executed. The vendee is the equitable owner of the land— the vendor is the owner of the purchase money. To the land a trust attaches; of it the vendor is seized for the use of the vendee. The trust binds the land, while the legal estate remains in the vendor; and it will bind the heir or devisee succeeding to it, and every one claiming under the vendor, except a *bona fide* purchaser without notice; as land, the vendee may convey or devise it; and as land it is descendible to his heirs.—*Wimbish v. M. M. B. & L. Asso.*, 69 Ala. 575; *Haughwout v. Murphy*, 22 N. J. Eq. 531; Pomeroy on Contracts, §§ 314, 315; 1 Pomeroy's Eq., §§ 368–72; 3 Pomeroy's Eq., §§ 1161, 1406; 2 Story's Eq., §§ 789–90.

The possession by Peck after the death of Chas. F. Ashurst was presumed to be in subordination and subservient to the equitable estate of Chas. F. Ashurst's mortgagee, and therefore, subservient to the title acquired by the purchaser at the mortgage sale.—*Graham v Nelson*, 5 Hump. 611; *Olwine v. Holman*, 23 Penn. St. 284. The right attempted to be enforced by the complainant was not a stale demand. The time of payment of the purchase money, or of making title, was not of the essence of the contract, and the enforcement specifically of the contract, at the instance of either party, is a matter of course, unless there be such a change of circumstances, as would render it inequitable.—*Chadwell v. Winston*, 3 Tenn. Ch. 110; *Edgerton v. Peckham*, 11 Paige, 352; *Waters v. Travis*, 9 Johns. 450; *Leaird v. Smith*, 44 N. Y. 618; *Morris v. Hoyt*, 11 Mich. 9; Pomeroy on Contracts, § 371, note, p. 444. The defendant was liable for the rents and profits that had been received while in possession of the property. While Peck and Charles F. Ashurst bore to each other the relation of vendor and vendee, and that relation is distinguishable from that of mortgagor and mortgagee, yet in this State it has long

been settled that when the vendor of land retains the legal title covenanting or promising to convey it on payment of the purchase money, he carves out his own security which is in the nature of a mortgage, and to which all the essential incidents of a mortgage attach.—*Lowery v. Peterson*, 75 Ala. 109 ; *Bankhead v. Owen*, 60 Ala. 457 ; *Hightower v Rigsby*, 56 Ala. 126; *Hughes v. Hatchett*, 55 Ala. 631.

If there were not allegations in the bill showing an offer on the part of the complainant to pay the purchase money ; and if he were not excused from tendering a deed to the heirs of Peck, a failure in these respects would not be a cause of demurrer ; it would affect only the question of costs.—*Stevenson v. Maxwell*, 2 Comst. (N. Y.) 408 ; *Bruce v. Tilson*, 25 N. Y. 194; *Morris v. Hoyt*, 11 Mich. 9 ; *Irvin v. Gregory*, 13 Gray 215.

J. M. CHILTON and J. M. FALKNER, *contra.*—The relation between A. B. Peck and Chas. F. Ashurst was that of vendor and vendee.—*Micou v. Ashurst*, 55 Ala. 607. The complainant being the vendee of the purchaser at the foreclosure sale, the mortgagee is not entitled to the relief prayed for, since the purchaser at the mortgage sale could not sell his interest in the property while it was adversely held by the defendants.—*Bernstein v. Humes*, 60 Ala. 583; *Coleman v. Hair*, 22 Ala. 596 ; *Pryor & Fisher v. Butler*, 9 Ala. 418 ; *Dexter & Allen v. Nelson*, 6 Ala. 68. The complainant was not entitled to maintain the present bill by reason of *laches.*—2 Leading Cases in Equity, White & Tudor's notes, Par 2, p. 1051, *et seq.* and cases there cited ; Waterman on Spec. Perf., § 475; *Young v. Young*, 45 N. J. Eq. 27; *McWilliams v Long*, 32 Barb. 194 ; *McDermid v. McGregor*, 21 Minn. 111; *Watson v. Reed*, 1 Russ. and Mylne 236 ; *Walker v. Jeffrey*, 1 Hare 348 ; *Eastman v. Plumer*, 46 N. H. 464, *Gentry v. Rogers*, 40 Ala. 442.

HEAD, J.—On the 22d day of November, 1886, W. T. Burney and wife, for the cash consideration of four thousand, two hundred and fifty dollars, sold and conveyed by deed to A. B. Peck the lands described in the bill. The bill avers that the purchase was negotiated by, and was really made for the benefit of, Charles F. Ashurst, who was the son-in-law of Peck, the latter agree-

ing to convey the lands to the former upon being repaid the said purchase money with interest; and so it was, that by an instrument in writing executed on the 1st day of December, 1886, the said Peck, reciting the said purchase, agreed that when Ashurst pays or causes to be paid to him the said purchase money (which in this instrument is stated to be four thousand dollars) with interest at ten *per cent. per annum*, he would make to him, Ashurst, the same warranty title that Burney and wife had made to him, Peck; and it was further stipulated that it was understood that the contract so entered into was based on a note that Ashurst had that day executed to Peck, and another that he would thereafter execute, covering the said four thousand dollars with interest. Upon the consummation of the purchase, the bill avers, Ashurst went into actual possession of the land, and remained therein until his death, which occurred in the fall of the year 1887, exactly when does not appear. The complainant avers that he does not know whether either of the mentioned notes was in fact executed or not. The recital of the written instrument, however, must be regarded as ground for the assumption that the first one was in fact executed and delivered to Peck. The complainant avers that after the purchase, Ashurst made "some considerable payments" thereon to Peck, but he does not know the amount. On the 17th day of January, 1887, Ashurst conveyed, by way of mortgage, his interest in the land to Lehman, Durr & Co., to secure a large debt due in October, 1887, with power of sale, on default, in John W. Durr and Joseph Goetter, or either, who were members of said firm ; and on the 1st day of April, 1889, Goetter, in conformity to the trust, executed the power and sold and conveyed the land, with other lands embraced in the mortgage, to Meyer Lehman for the sum of three thousand dollars. Afterwards, on the 15th day of February, 1890, Lehman conveyed the land to the complainant, James V. Ashurst, who immediately offered to pay to the administrator of said A. B. Peck, who died meanwhile, whatever balance there was due to the estate of said A. B. Peck on said purchase, but the administrator refused to accept the payment. The bill avers that on the death of Charles F. Ashurst, in the fall of 1887, said A. B. Peck took possession of the lands and received the crops and rents of 1887, amounting in value

to one thousand dollars, or other large sum, and remained in possession thereafter until his death, receiving the rent of such portion as was rented, and enjoying the use of such portion as was not rented, and that since his death, the date of which is not averred, his administrator, W. D. Peck, as such, has remained in possession, receiving each year the rents, and enjoying the use, as his intestate had done, amounting to specified large sums; and it is insisted that the payments made by Charles F. Ashurst in his lifetime, and the said crops, rents and values of use and occupation received and enjoyed by Peck and his administrator since, are proper credits on the indebtedness owing by Chas. F. Ashurst. The bill is filed by said James V. Ashurst against the administrator and heirs of A. B. Peck to obtain specific performance of the contract of purchase. He prays for an accounting wherein he shall be allowed all just credits on said indebtedness, and offers and submits himself to pay whatever sum may be found due the estate of A. B. Peck thereon, and prays for a conveyance, and for general relief.

It is objected, by way of demurrer to the bill, that the relief sought can not be had by this complainant, for that the conveyance to Lehman, under the foreclosure sale, and his conveyance to complainant, are void for maintenance, because, upon the facts averred, which we have substantially set forth above, A. B. Peck, or his administrator, must be held to have then had possession of the land adversely to Lehman, Durr & Co. and Lehman. We are of opinion that the presumption, upon the facts as we find them stated, is that the possession taken and held by Peck and his administrator, when the occupancy of Chas. F. Ashurst was terminated by his death, was in subordination to the equitable title of the latter's mortgagees and Lehman claiming under them, until the refusal of the administrator to perform the contract took place. Upon entering into the contract of sale by Peck with Chas. F. Ashurst, equity treated Peck, the vendor, as the owner of the purchase money, and as trustee of the legal title to the land for the use of Ashurst, the vendee, and for his, the vendor's, security in the collection of the purchase money, by virtue of the lien which equity raises, in the nature of a mortgage, in favor of the vendor who retains in himself the legal title;

Ashurst, the vendee, being regarded as the real owner of the land, and as trustee of the vendor for the purchase money. The mere possession and pernancy of rents and profits by Peck and the administrator created no implication of hostile enjoyment. They were presumptively subservient to the equitable ownership, and it devolves upon him who would claim that such possession was, in fact, adverse, to aver and prove an assertion of actual hostility, so manifested as that actual knowledge thereof, or that which must be regarded as its equivalent, was carried home to the equitable owner.— *Wimbish v. Loan Association*, 69 Ala. 575 ; 1 Pomeroy's Eq., §§ 368–72 ; 2 Story's Eq., §§ 789–90, and other authorities cited on brief of appellant's counsel. The present bill may be taken as showing such an adverse assertion from and after the administrator's refusal to perform the contract, but not sooner.

It is argued by the appellees that the bill does not set forth, with sufficient certainty, the terms of the contract of purchase, in that it fails to show when the purchase money to be paid by Ashurst was payable. We have seen that the written agreement stipulates that Peck would convey when Ashurst "pays or causes to be paid" the purchase money ; and further, that the contract was based on a note then executed by Ashurst, and another note he would thereafter execute covering the purchase money. The only reference in the bill to these notes is the averment that complainant does not know whether they were ever executed or not ; and aside from this there is no averment when the contract was to be performed by the payment of the money on the part of Ashurst. It is averred that Ashurst made some payments before his death in the fall of 1887. The ground of demurrer upon which the argument is predicated is assigned in the following words : "The bill fails to describe the notes alleged to have been executed for the purchase money, or to show when same was due." It is obvious that the allegation of the bill above referred to, that complainant did not know whether the notes were ever executed or not, was intended by the pleader as the averment of an excuse for the absence of a particular statement of the terms of the contract in reference to the time stipulated for performance on the part of the vendee, if indeed there was such a stipulation. It is observed that

Ashurst v. Peck et al.]

the bill does not allege that there was such a stipulation further than it might be inferred there was such from that clause in the written contract, that a note had been executed, and that another would be executed covering the purchase money. What the tenor and effect of these notes were, or were to be, whether they expressed or were to express a particular time of payment does not appear either by recital of the contract or averment of the pleader. If the notes, both of them, were in fact executed, the presumption is that they were in the possession of Peck's administrator when this bill was filed; and if the complainant, as he alleges, did not, in fact, know whether they had been executed or not, and if he made all reasonable effort to inform himself as to their existence and effect without avail, we are of opinion that he would not be without remedy for specific performance of the contract because of his inability to aver affirmatively that time for the payment of the purchase money was or was not expressly fixed by the contract, and if so fixed what that time was; but we think, rather, that as the terms of the contract, so far as known to the complainant, are peculiarly made to appear in this transaction, the complainant, coming to his rights by assignment from the original vendee, would be justified in assuming, as he has, in effect, done in the present bill, that the contract was to be performed by the vendee within a reasonable time, and as much earlier as the vendee might choose to perform; at least until disclosure from the defendants, representing the vendor, that the terms of the contract fixed the time for its performance. It may be that the averment, simply, that complainant does not know whether the notes were executed or not, is insufficient to excuse a more specific averment of the terms of the contract, in that it does not show that complainant had done what he ought to have done to inform himself in the premises; but we are of opinion that the demurrer does not sufficiently raise that objection. The demurrer assumes that both the notes were executed and requires that the bill should describe them, or show when they became due, without exemption from that requirement by reason of any excuse whatever. As we have said, the pleader intended to aver an excuse, and if the averment is insufficient, the defect should have been pointed out by the demurrer so that it might have been obviated by amendment.

It is also demurred that "The alleged right of complainant is stale." We do not understand it to be insisted that the supposed staleness is produced by the mere lapse of time. It appears that the bill was filed about five and one-half years after the contract of sale was entered into, and about one year and ten months after complainant offered to perform the contract. The argument which proceeds upon this assignment of demurrer is, that the complainant has so acquiesced in the assertion by the vendor and his personal representative of possession of the land, and the reception by them of the rents and profits, that a court of equity, in the discretionary exercise of its jurisdiction to enforce executory agreements, should not lend him its aid in the enforcement of the present contract. It is said that the statutory duties of the administrator in respect of the land and its rents, which it must be presumed he has performed, have imposed upon him obligations and liabilities to his trust, which he can not discharge uninjured if he is made to surrender these lands and account to complainants for the rents and profits he has received, and that complainant, having acquiesced in the exercise of his statutory powers over the land and the imposition upon himself of these obligations and liabilities, without sooner moving for the relief now sought, should be estopped from asking a performance of the contract. As in reference to the demurrer last considered, we think we are not called upon to pass upon the merit of this argument, for the reason that the demurrer does not properly raise it. The affirmation that the demand is stale does not imply mere acquiescence in special conditions and circumstances which render it inequitable to enforce the demand; but it implies rather that the suitor has slept upon his supposed rights for so great length of time that it may be justly expected that events have become forgotten, witnesses died or removed beyond the reach of parties, and other means of proof lost or destroyed. Bouvier defines stale demand as, "A claim which has been for a long time undemanded; as for example, where there has been a delay of twelve years unexplained, (2 Bouv. Law Dic. 660) ; and Repalje defines it, as "A demand or claim which has not been pressed or asserted for so long a time that a court of equity will refuse to enforce it."—2 Rap. Law Dic. 1214. The idea involved

seems to be the great lapse of time, and not mere changes in conditions, apart from such lapse of time, which render the enforcement of the demand inequitable. We are of opinion, therefore, that good pleading requires, in order to support the argument now made, that the demurrer point, more definitely than in the present case, to the facts and circumstances which are insisted render the complainant's demand inequitable.

It is not essential to the maintenance of a bill for specific performance that the complainant, vendee, offer to perform, or tender a deed before filing the bill. A failure to do so affects only the question of costs.—*Stevenson v. Maxwell*, 2 Coms. (N. Y.) 408; *Bruce v. Tilson*, 25 N. Y. 194; *Morris v. Hoyt*, 11 Mich. 9; *Irvin v. Gregory*, 13 Gray 215.

It is a familiar rule, declared in many of our decisions, that the relation of a vendor of lands, who has retained the title and bound himself to convey on payment of the purchase money to his vendee, is analogous to that of mortgagee to mortgagor. All the incidents of a mortgage attach to it. We hold, therefore, that such a vendor in possession of the lands is accountable to the vendee or his assignee for rents and profits to like extent that a mortgagee in possession is accountable.

The other grounds of demurrer are so manifestly untenable that we do not discuss them.

The decree of the chancery court is reversed, and a decree will be here rendered overruling the demurrers to the bill and remanding the cause for further proceedings. The defendants will plead to or answer the bill within thirty days, with authority in the chancery court to extend the time, if necessary.

Reversed, rendered and remanded.