# The Bank of Opelika v. Kiser, Moore, Draper & Co.

*Bill to Declare Transfers of Property a General Assignment.*

1. *General assignment; statutes construed.*—The pre-existing statute relating to general assignments, which the act of 1892-3 purports to amend, was directed only to preferences as a feature of a general assignment; and a general assignment, without regard to its form, was construed to be a transfer, or a conveyance by a debtor of all, or substantially all of his property, to *secure* the payment of debts; sales or conveyances, absolute and unconditional, in *payment* of debts, were not within the statute. The office, scope, and effect of the amendatory act (Acts, 1892-3, p. 1046), was to draw such sales or conveyances in *payment* of pre-existing debts within the operation of the statute, converting them, like general assignments, into a common security for the benefit of all the creditors of the grantor.

[The Bank of Opelika v. Kiser, Moore, Draper & Co.]

2. *Substantially all of debtor's property must be conveyed.*—Sales or conveyances of property in payment of debts, or dispositions thereof to secure the payment of debts, are not within the influence of the statute, unless they comprehend all, or substantially all, the property of the debtor liable for the payment of debts.

3. *Equity pleading; burden of proof.*—Unsecured creditors, resorting to a court of equity to engraft on conveances or sales, the trusts the statute creates for their benefit, must, by appropriate pleading, show that in the transactions on which they rely, substantially all the property of the debtor, subject to the payment of aebts, was parted with or transferred; and, if such averment is not admitted the burden of proof is on the party pleading.

4. *Equitable interest in lands; when not subject to execution.*—The vendee of lands under an executory contract of sale, having paid a portion of the purchase money and gone into possession, has not a perfect equity, nor an equity of redemption, nor a vested legal interest in possession, within the meaning of the statute subjecting such interests to levy and sale under execution at law.

5. *Equitable interest in lands, subject in equity to payment of debts.* Though a vendee of lands under executory contract of purchase, having paid the purchase money only in part, has no interest subject to levy and sale under legal process, he has an equitable interest, capable of being reached in equity, and subjected to the payment of debts; equitable estates or interests in lands are as subject to the payment of debts as legal estates or interests, though to reach and subject them, different remedies must be pursued.

6. *General assignment must include equitable assets.*—A general assignment for the benefit of creditors must pass substantially all the property of the debtor, whether his title or interest be legal or equitable; if the assignor has and retains equitable assets of considerable value, it is but a partial, not a general assignment.

APPEAL from Randolph Chancery Court.

Tried before Hon. S. K. McSPADDEN.

The facts are sufficiently stated in the opinion. The answers of defendants denied that the conveyances sought to be declared a general assignment conveyed all or substantially all the property of the debtor. The chancellor rendered his decree granting complainants relief. Defendants appeal and assign as error among

other things the overruling of demurrers to the bill, and the rendition of the final decree.

DOWDELL & DUKE, for appellants, cited, Acts 1892-3, p. 1046; *Rogers v. Prattville Mfg. Co.*, 81 Ala. 483; *Tillman v. DeLacy*, 80 Ala. 103; Code, 720, sub. 3; *Rutland v. Chesson*, 98 Ala. 435.

(No counsel marked for appellee.)

BRICKELL, C. J.—The bill was filed by the appellees, simple contract creditors of the Rosedale Manufacturing Company, alleged to be a corporation, and to have been at the time of the transactions referred to in the bill, "engaged in manufacturing cotton into yarn, and doing a general merchandise business." The purpose and prayer of the bill and its allegations are not adapted to or consistent with any other relief, is, that certain transfers of personal property, choses in action, etc., which have been made by the company to the Bank of Opelika, the Bank of Roanoke, and Hill, Jones & Co., defendants, respectively, in payment, or as security for the payment of antecedent debts, be declared a general assignment, or a conveyance, inuring to the equal benefit of all the creditors of the company. The statute on which the bill is founded, so far as new material, reads: "Every general assignment made by a debtor, or a conveyance by a debtor of substantially all of his property in payment of a prior debt, by which a preference or priority of payment is given to one or more creditors, over the remaining creditors of the grantor, shall be and inure to the benefit of all the creditors of the grantor equally," etc. (Pamph. Acts, 1892-3, p. 1046.) The pre-existing statute, which this act purports to amend, was directed only to preferences as a feature of a general assignment; and a general assignment, without regard to its form, was construed to be a transfer, or a conveyance, by a debtor of all, or substantially all, of his property to *secure* the payment of debts. 1 Brick. Dig. 130, §§97-100; 3 Brick. Dig. 49, §§16-38. Sales, or conveyances, absolute and unconditional, in payment of debts, were not within the purview or purposes of the statute.—3 Brick. Dig. 50. §29; *Ellison v. Moses*, 95 Ala. 221. In reference to this amendatory act, it was said in *Bell v. Goetter*, 106 Ala. 471, that its office, scope

and. effect, was, to draw such sales or .conveyances in *payment* of pre-existing debts within the operation of the statute, converting them like. general assignments into a common security for the benefit of all creditors. And in the subsequent case of. *Gay v. Strickland,* 112 Ala. 572, we said: "The purpose.of the amendment of the statute, is to draw all such sales, all conveyances of substantially all the property of a debtor, in payment of a pre-existing or prior debt within its operation. Placing such sales or conveyances upon the same footing with instruments of assignment, or of other form of security for the payment of debts; engrafting upon each the same trusts—trusts for the equal benefit of all creditors. The sale or conveyance is not annulled; nor is it regarded as fraudulent. It is preserved, as the assignment, or other form of security for the payment of debts is preserved. At the election of other creditors, it inures to their benefit—the vendee becomes a trustee, holds the title passing by the sale or conveyance, but holds it for the equal benefit of all creditors, as if such had been the expressed purposes and objects of the sale or conveyance. The same construction of the statute in reference to these sales or conveyances, must be adopted which prevailed in reference to assignments, or other instruments of security for the payment of debts."

It is not, of consequence, material to inquire into the particular character of the transfers, or dispositions of property, now drawn in question. Conceding them to be sales or conveyances in payment of debts, or dispositions to secure , the payment of debts, they are not within the influence of the statute, unless they comprehended all, or *substantially* all the property of the corporation liable for the payment of debts. The words of the statute, following judicial decision in construction of the pre-existing statute, are *"substantially all of his property."* No one of these dispositions, nor all .combined, purported to be a disposition of all the property of the corporation. They operated upon, and were intended to operate only as transfers of particular property, raising no inference or presumption that the corporation had not other property, sufficient for the payment of all, other creditors, if other creditors existed.

It is an elementary rule of equity pleading, that

"every bill must show clearly that the plaintiff has a right to the thing demanded, or such an interest in the subject-matter, as gives him a right to institute a suit concerning it."—1 Dan. Ch. Pl. & Pr. 314. Unsecured creditors resorting to a court of equity to engraft on conveyances or sales, the trusts the statute creates for their benefit, must by appropriate pleading, show that in the transactions on which they rely, *substantially all the property* of the debtor, subject to the payment of debts, was parted with or transferred. Otherwise, it will not appear that there is cause for the intervention of the court, nor that the state of facts exists from which the trusts arise. The averment of the fact being made, if its truth be not admitted, the burden of proof rests upon the party pleading.—*Ordway v. White*, 80 Ala. 244; *Parsons v. Johnson*, 84 Ala. 254; *U. S. v. Howland*, 4 *Wheaton*, 108; *U. S. v. Monroe*, 5 *Mason*, —— 572. This brings us to the more important inquiry of the case, is it shown affirmatively by the evidence, that the transfers or conveyances from which the complainants deduce their equity, embraced *substantially all the property* of the corporation, subject to the payment of debts. If this fact be not shown, the equity of the bill fails.

On January 18, 1894, the corporation being indebted to the Bank of Roanoke in the sum of $4,500, transferred to it warehouse receipts for 100 bales of cotton yarns, then in the Planters' Warehouse at Roanoke, Ala., with the express understanding that if it would pay one-half the debt and give satisfactory security for the balance, the bank would extend the time of payment on the balance. A few days afterwards the corporation sold fifty of the bales of yarn for $2,032, drew its draft on the purchaser for the amount, transferred the draft to the bank, receiving credit therefor on its account, and obtained a release of the other fifty bales after giving security for the remainder of the debt. On January 27, 1894, it transferred to the Bank of Opelika the entire stock of merchandise in the general mercantile store conducted by the corporation in absolute payment of an indebtedness of $4,641.50, and on the same day it transferred to Hill, Jones & Co. 257 bales of cotton yarn in payment of an indebtedness approximating $11,000. The property thus transferred did not exceed in value the amount of the debts paid. In addition to the property thus trans-

ferred, the corporation had at the time of the transfers an interest in the factory buildings and grounds, 246 acres of land, and a number of tenement houses, besides some personal property, and was in possession of the same.    Its interest in the real property was derived as follows:   On June 6, 1887, William Waldo Hyde, as trustee, purchased the property at a sale under a decree in chancery, and on June 27, 1887, he sold the same to Caroline E. Darden and Lucretia C. Randle, and delivered to them an agreement in writing by which he bound himself to convey the property to them or their assigns by quit-claim deed, upon the payment of $22,000 in semi-annual payments of $1,000 each.   The agreement provided, that upon default for thirty days in the payment of any installment of principal or interest, the vendor should have the right to sell and convey the property to any other parties without recourse to legal proceedings.   On January 10, 1888, the said Caroline E. Darden and Lucretia C. Randle sold and conveyed all their right, title and interest in the property to the corporation, the latter assuming the payment of the purchase money due said Hyde, and going into possession, which continued until after the transfers to defendants. At the time of the transfers the corporation had paid of the purchase money $13,000 and accrued interest, leaving a balance due of $9,000, and, so far as appears from the evidence, no default had been made in the payment of either principal or interest.   The interest of the corporation thus acquired, was not a perfect equity, nor an equity of redemption, nor a vested legal interest in possession, within the meaning of the statute (Code 1886, §2892), subjecting such interest in real property to levy and sale under execution at law.

Though the interest or estate of the corporation in the real estate, was not the subject of levy and sale under legal process, it had an equitable estate, capable of being reached in equity and subjected to the payment of debts.   The settled doctrine of courts of equity is, that from the time a valid contract for the purchase of land is entered into, the vendor, as to the land, becomes a trustee for the vendee, and as to the purchase money, the vendee becomes a trustee for the vendor.   When, as in this case, the contract is in its legal nature executory, the vendor binding himself on payment of the purchase

money at a future day, to make title, the court pursuing its own maxim of regarding that as done which the parties contemplate shall be done in the final execution and consummation of the contract, for most purposes, treats the contract as specifically executed. The vendee is the equitable owner of the land—the vendor is the owner of the purchase money. To the land a trust attaches—of it the vendor is seized for the use of the vendee. The trust binds the land, while the legal estate remains in the vendor, and it binds all who may succeed to the legal estate, other than *bona fide* purchasers for value without notice. If there is not a stipulation to the contrary, the contract of itself operates a transmutation of the possession, entitling the vendee to the right of entry and of enjoyment; and as land he may convey or devise it, and if not conveyed or devised, as land it descends to his heirs.—1 Story Eq. Jur. (12th Ed.) pp. 789-90; *Reid v. Davis,* 4 Ala. 83; *Wimbish v. M. M. B. & L. Asso.,* 69 Ala. 575-78; *Ashurst v. Peck,* 101 Ala. 499.

The statue prior to the Code of 1852, which rendered liable to execution at law only strict legal estates or interests in land, provided, that "the equitable title or claim to land or other real estate, shall be liable to the payment of debts by suit in chancery and not otherwise." —Clay's Dig. 350, 351. The Code of 1852 first subjected to levy and sale under execution at law, a perfect equity and an equity of redemption in lands, and provided, as has since been provided in all subsequent revisions or codifications of the statutes, that the jurisdiction of the court of chancery should extend to the subjection of an equitable title or claim to real estate to the payment of debts. (Code of 1886, §720, subd. 3.) The statute is but a recognition of the general doctrine and principle, that all property, or right of property, in which a debtor has a beneficial interest (not by law exempt), is subject to a payment of debts—that equitable estates or interests in land, are as subject as legal estates or interests, though to reach and subject them different remedies must be pursued.

A general assignment as distinguished from a *partial* assignment, is defined by Burrill, as a transfer or conveyance "by which all or substantially all a debtor's property is appropriated for the benefit of one or more preferred creditors, or of creditors at large, made by a

debtor in declining or insolvent circumstances."—Burrill on Assignments, 313. It is of the very nature and essence of a general assignment for the benefit of creditors, that it should pass all property and rights of property, capable of assignment or transfer, whether the title or interest of the assignor be legal or equitable. If the assignor has property, or rights which are legal assets— assets which may be reached by legal process and subjected to the payment of debts, and he applies them to pay, or to secure particular creditors, having and retaining assets of considerable value, which are equitable—assets held by a title prevailing in a court of equity, in which he has a beneficial interest, the legal title outstanding in another, in trust for him, the assignment or transfer of the legal assets, is but a *partial*, not a *general* assignment, and is not within the purview or meaning of the statute. Cases may occur in which there may be attempts to evade the statute—in which there may be a reservation or exception of particular assets, legal or equitable—to avoid the appearance of a general assignment; and in such cases, the courts will not be slow in ferreting out the real nature of the transaction. There is in this case no room for the imputation of a fraudulent intent—of any purpose to evade the statute. The corporation had the equitable estate in the real property, shown in value to exceed its outstanding unsecured debts. In determining the pivotal inquiry, whether the transfers from which the complainants deduce their equity, passed "substantially all the property" of the corporation, the value of the equitable estate must be considered—it is as subject to the payment of debts as would be a corresponding legal estate.

There was also personal property claimed by the corporation, consisting of machinery for which it had paid from six to eight thousand dollars, placed in position and used in the factory, at the time of the transfers drawn in question, of the value of about four thousand dollars. Whether this machinery had been annexed to the realty, and by the annexation a permanent accession to the freehold was intended, is not shown by the evidence. Courts can not know otherwise than through the medium of evidence the particular facts necessary to convert this character of property, primarily personal, into·fixtures, or parts of the realty in connection

with which it may be used. The burden of proving such facts, if from them they could derive benefit, rested on the complainants. As the case is now presented by the evidence, the machinery must be deemed the personal property of the corporation, in determining the character of the transfers to the appellants.

The conclusion is unavoidable, that the transfers to the appellants did not embrace "substantially all the property" of the corporation—that the corporation had other property, real and personal, sufficient for the payments of its debts, and this conclusion renders it unnecessary to consider any other question involved. The decree of the chancellor must be reversed, and a decree rendered dismissing the bill original and amended. The appellees must pay the costs of the court of chancery to be taxed by the register, and the cost of appeal in this court, and in the court of chancery.