# Peck, Adm'r. v. Ashurst.

### Bill to Enforce Specific Performance.

108 429
121 547
108 429
127 433

1. *Executory contract; time of performance, when none stated.*—Where no time is expressly limited for the payment of the money mentioned in a special contract in writing, the legal construction is, that it is payable presently.

2. *Specific enforcement of contract for sale of lands.*—The failure of the purchaser to give notes for the deferred payments, as prescribed in the contract of sale, does not interfere with his right to file a bill for specific performance, upon making the proper tender of the deferred payments, after maturity, where the written contract itself by its terms fixes the rights and duties of the parties.

3. *Variance between allegata and probata.*—The variance between the allegations and proof sufficient to defeat an action must be of a material and essential fact; otherwise it will be disregarded.

4. *Purchase by mortgagor from vendee at foreclosure sale.*—When one of several joint mortgagors, subsequent to the foreclosure sale, purchases the mortgaged premises from the vendee, the mortgage is not eliminated, but becomes a link in the chain of title.

5. *Vendor of lands retaking possession becomes liable for rents and profits.*—When a default is made by the vendee, under an executory contract of sale, and thereupon the vendor re-enters into possession of the premises, he becomes liable for the rents and profits accruing during his possession, and must account therefor on a bill filed by the vendee to enforce the specific enforcement of the contract.

APPEAL from Montgomery Chancery Court.

Heard before Hon. JERE N. WILLIAMS.

The bill was filed by James V. Ashurst, the appellee, to enforce the specific performance of a written contract for the sale of land. From it, it appears, that A. B. Peck, under an arrangement with Charles F. Ashurst, purchased from W. T. Burney a plantation containing 793 acres of land, lying and being in Tallapoosa county, Ala., known as the Burney place, and described in a deed from Burney and wife to said A. B. Peck. The contract, signed by said Peck, contains the following agreement: "It is agreed that when Charles F. Ashurst, pays or causes to be paid to me, the $4,000 the same being the purchase money, (paid by said Peck to Burney for the land) with interest at ten per cent. per annum, then I promise and agree to make to the said Ashurst, the same warranty titles that Burney and wife made to me. It is further understood, that this contract is based on a note that Ashurst has this day executed to me, and another that he will hereafter execute, covering said $4,000 with interest as stated." This contract was dated, Montgomery, Ala., Dec. 1, 1886.

It is alleged,—"Whether said notes were in fact executed, orator does not know;" that said Charles F. was put in possession of the land and so remained, until the fall of 1887, when he died; that before his death, said Charles F. made considerable payments thereon to said Peck, the amount of which was unknown to complainant; that on the death of said Charles F. said Peck took possession, received the crops and rents for 1887, in value of $1,000, and remained in possession receiving the rents and profits until he, Peck, died, and having, also, the use and occupation of such of the lands as were not rented, for the years ———————; that since the death of A. B. Peck, his administrator, W. D. Peck, as such, has remained in possession of said lands, receiving each year, the rents of such portion as was rented out, and the use and occupation of such as was not rented, the value of the rents being $1,000 per year, and a like sum for use and occupation; that the sums received as rents, and the use and occupation by said A. B. Peck, before his death, and since, by his administrator, are credits on said debt, and that said administrator is now in possession as such administrator, of said lands; that Charles

F. on the 17th of January, 1887, conveyed by way of mortgage, his interest in said lands, with other property, to a firm doing business at Montgomery, Ala., under the name of Lehman, Durr & Co., to secure a debt due in 1887; that the mortgage provided, that two members of said firm, Durr and Goetter, or either of them, might sell on default of payment; that default was made, and Durr and Goetter sold said lands, and other lands, under the power of sale, and the same were bought by and duly conveyed to one Meyer Lehman, for the sum of $3,000; that afterwards, on the 18th February, 1889, said Meyer Lehman duly conveyed the said lands. with all his rights, title, interest and claim in and to them, to complainant; that complainant immediately after said conveyance to him, offered to pay said W. D. Peck, as administrator, whatever balance then was due A. B. Peck's estate, on the purchase of the lands, which offer was refused, and complainant, as the bill recites, "now here offers and submits to pay, whatever sum may be found due to the estate of A. B. Peck on a just accounting, on the purchase of said lands;" that A. B. Peck died intestate leaving the following children heirs at law, to-wit: Carrie R. Ashurst, W. D. Peck, Lottie Pope and his widow, Sallie Peck, all of whom were over 21 years of age, who, with W. D. Peck, both as administrator and individually, are made parties defendants.

The prayer was that "an account of the balance due on said debt of $4,000 due from said Charles F. Ashurst in the purchase of said Burney lands, may be taken, and that all just credits may be allowed, and that orator be decreed to be entitled to a conveyance of said lands upon paying the balance due on such debt, which he is willing and hereby offers to pay, as the court may direct."

The defendant demurred, and the chancellor sustained the demurrer. His rulings were reversed by the supreme court, and the original demurrer was not again interposed. Another demurrer on other grounds was interposed as follows: 1. "Said bill fails to show with sufficient certainty what the terms of the contract were, as finally consummated between A. B. Peck and Charles F. Ashurst, in that it fails to allege whether Charles F. Ashurst in fact executed the notes which, by the terms of said contract, he was afterwards to execute, and prays no discovery in respect to the same; 2, Substantially the

same as the first, except it is added, that the bill fails to show that complainant had made any effort to inform himself as to the existence and effect of the notes, without avail. 3. That on the facts stated in said bill, the complainant has so acquiesced in the assertion by said vendor and his personal representative of possession of said lands, and the reception by them of the rents and profits, that a court of equity, in the discretionary exercise of its jurisdiction to enforce executory agreements, should not lend its aid in the enforcement of said contract.

In the answers, defendants admit the execution of the contract between Peck and Ashurst; that said Peck died intestate and that the parties named are his heirs at law; that A. B. Peck took possession of the lands, and after his death, that said administrator took possession of them; that A. B. Peck and his administrator, each received rents from the lands while in possession, which was not more than $500 per annum; that the mortgage by Charles F. Ashurst—which they allege was the mortgage of Ashurst Bros. composed of said Chas. F. and complainant—described property which belonged individually to the partners as shown on the face of the mortgage, and included the lands here involved, which are in said mortgage described as the individual property of said Charles F., subject to an encumbrance in favor of A. B. Peck of $4,000; that in order to convey their individual property, the mortgage was signed by complainant, James V. and by Charles F. Ashurst, individually, which mortgage was also signed by J. V. Ashurst & Bro.; and they aver that said mortgage recites an indebtedness of said firm to Lehman, Durr & Co. and conveys the property to secure that indebtedness, and the obligation of the firm to deliver cotton, &c-, or to pay commissions in default of delivery, as is usually provided in mortgages to warehousemen and commission merchants; that said mortgage was foreclosed by Lehman, Durr & Co., and the execution of a conveyance by Durr and Goetter to Meyer Lehman, a member of said firm, is admitted; that said Meyer Lehman executed said conveyance to complainant, quit-claiming to him all his right, title, interest and claim in and to said lands, but they say said conveyance was executed, on the 15th Feb-

ruary, 1890, and not on the 15th February, 1889, as averred in the bill.

They deny that said Charles F. made any payments on the land; that the administrator continued in possession; that complainant is entitled to the value of the rents and for use and occupation; that the indebtedness secured by said mortgage by Ashurst Bros. was the individual debt of said Charles F. for which he alone was liable, but aver, that it was the debt of each of the partners for which they were both equally bound; they deny that the foreclosure of said mortgage was valid, which denial is based on the averment, that A. B. Peck had taken possession of the land, in default of the payment of the purchase money, and was in actual possession, holding adversely at the date of the sale and conveyance. They deny that complainant ever made any actual tender of the purchase money for said lands, but admit that if he had done so it would have been refused.

They set up, that complainant in his settlement with Lehman, Durr & Co. which was made after the foreclosure, paid the full amount of their indebtedness, which was an extinguishment and not a purchase of the mortgage. They set up by way of plea and answer, that a partition was made of the lands of said A. B. Peck, by his heirs between themselves, on the 5th Dec., 1891, and the property here in controversy fell to the defendant, Carrie R. Ashurst, and was conveyed to her by all the other heirs, and she has been in the possession of them since.

On the hearing of the cause, on pleadings and proof, the chancellor rendered a final decree, overruling the demurrers, and decreeing that the complainant was entitled to relief as prayed and ordered an account to be taken and stated, as sought in the prayer.

The errors assigned and insisted on are, 1. The court erred in overruling the several grounds of demurrer; 3, 4. The court erred in rendering a final decree for complainant, but should have rendered a decree dismissing the bill; and 5th, in directing the register to take an account between the complainants and all the defendants, as to the value of the rents and profits.

The testimony as far as necessary to be noticed, is stated in the opinion.

28

JOHN M. CHILTON and J. M. FALKNER, for appellants. "To support a bill for specific performance, the contract must be clearly and distinctly averred, and must appear to be definite and unequivocal in all its terms."—3 Brick. Dig., § 361, 426 ; *Allen v. Young*, 88 Ala. 338 ; *Aday v. Echols, Admr.*, 18 Ala. 353 ; *Bogan v. Daughdrill*, 51 Ala. 312; *Goodwin v. Lyon*, 4 Port. 297 ; *Johnson v. Jones*, 85 Ala. 286 ; *Daniel v. Collins*, 57 Ala. 625 ; *Cox v. Cox*, 59 Ala. 591 ; *Clarke v. Snodgrass*, 66 Ala. 233 ; *Riddle v. Cameron*, 50 Ala. 263 ; *Merrick v. Monette*, 73 Ala. 75 ; *Goodlet v. Kelly*, 74 Ala. 213; *McDonald v. Walker*, 95 Ala. 172.

Fatal variance between allegations and proof.—*McDonald v. Walker*, 95 Ala. 172, 174 ; *Meadows v. Askew*, 56 Ala. 584; *Floyd v. Ritter*, 56 Ala. 356 ; *Johnson v. Jones*, 85 Ala. 286.

*The complainant is guilty of laches.*—Waterman on Spec. Per., §§ 473, 475. An unexplained delay of five months held fatal.—*Max v. Baldos*, 78 Ill. 225 ; and of twelve months.—*Goodwin v. Lyon*, 4 Port. 297; *Fox v. Phelps*, 18 Fed. Rep. 120; and three years.—*Boston R. Co. v. Bartlette*, 18 Gray (Mass.) 384. And four years.—*McCabe v. Mathews*, 40 Fed. Rep. 338. And five years.—*McWilliams v. Long*, 32 Barb. 194.

Specific performance will be denied when new rights and equities have intervened, or where it works an undue hardship.—3 Brick. Dig., § 414, 420 ; *Hays v. Hall*, 4 Port. 374 ; *Daniel v. Collins*, 57 Ala. 325. The payment by J. V. Ashurst of the debt to Lehman, Durr & Co. extinguished the mortgage, and the parties were remitted to their original status, so far as any rights had been acquired by virtue of the mortgage. That the payment by J. V. Ashurst, though nominally received for Meyer Lehman, was really in behalf of Lehman, Durr & Co. is shown by following facts : (a) The amount due Lehman, Durr & Co. by J. V. Ashurst & Bro. at the date of the settlement was $6,900, and that was the exact amount paid by J. V. Ashurst. (b) The amount bid by Meyer Lehman at foreclosure sale was only $3,000, and on redemption could have been obtained for that sum with ten per cent. interest and lawful charges. (c) The deed from Lehman to Ashurst recites the nominal consideration of ten dollars; if the payment of $6,900 had been paid as purchase money to Lehman, the deed would

have recited the sum as consideration. (d) The note and mortgage were delivered to Ashurst on payment by him of $6,900 to Lehman, Durr & Co.

W. A. GUNTER, for appellee.—The merits of the demurrers are sufficiently considered in the opinion on former appeal.—*Ashurst v. Peck et al.*, 101 Ala. 409. See also brief for appellant filed therein.

The subject matter is fully identified; the obligation of Peck to convey *whenever* Ashurst pays a given sum and interest at a given rate appears fully in the written contract. The terms of the contract, those terms which fix with absolute certainty all the rights and duties of the parties, are shown in the bill. Whether or not the notes were actually given is wholly immaterial, except in one aspect, namely, that if the notes were not due at the time the bill was filed, then the suit was premature; but this was matter of defense. In this case the consideration is certain, the land to be conveyed is certain, and the time of performance is "whenever Ashurst pays or causes to be paid" the purchase money and interest.

The doctrine of laches has no application. The refusal of Peck to convey was made only about a year before the bill was filed. Until such refusal his possession was in no sense adverse, and presumptively was in subservience to the equitable title.

The state of the accounts between J. V. Ashurst and the firm of J. V. Ashurst & Bro. and Charles F. Ashurst is a matter that does not concern defendants. If Charles F. Ashurst were alive and would have the right to enforce this contract, then J. V. Ashurst, his assignee, has a perfect right to enforce the contract in this suit.—69 Ala. 575.

HARALSON, J.—When this case was here on a former appeal (101 Ala. 499), its equity, as for any objections then interposed to it by demurrer, was sustained. One ground of demurrer there was, that the bill failed to describe the notes alleged to have been executed for the purchase money, or to show when the same were due, and it was insisted, that the bill, on that account, did not set out, with sufficient certainty, the terms of the contract of purchase, in that it failed to show when the

[Peck, Admr., v. Ashurst.]

purchase money to be paid by Ashurst was payable. It averred, that complainant did not know whether either of said notes was in fact executed or not. The recital of the instrument, however, shows that the first one, was in fact executed and delivered to Peck. This ground of demurrer was, for reasons stated in the opinion, regarded as not well taken, but it was added: "It may be, that the averment, simply, that complainant does not know whether the notes were executed or not, is insufficient to excuse a more specific averment of the terms. of the contract, in that it does not show that complainant had done what he ought to have done, to inform himself in the premises; but we are of opinion that the demurrer does not sufficiently raise the question." Acting upon this expression, the defendants, on the return of the case to the chancery court, filed a new demurrer to the bill, on grounds set out therein, which was intended to cure the supposed defect in the former demurrer. It will be observed, that we did not decide, that the averment, that complainant did not know whether the notes were executed or not, was an insufficient averment of the terms of the contract, when taken in connection with its other terms, but the expression was it may be, such an averment was insufficient. A close inspection of the contract, however, discloses, that its terms, such as fix the rights and duties of the parties, leaving nothing to negotiation,—the names of the parties, the subject matter of the contract, the consideration and the promise, are fully set out in the writing, and the bill alleges the purchaser was put in possession of the lands, and so remained, until he died in the fall of 1887. The contention on the part of the defendant is, that inasmuch as the second note referred to in the contract, as the one that complainant will thereafter execute, is not alleged to have been executed, and the date of its payment specified, the contract is too indefinite, to be specifically executed.

It will be observed that the statute of frauds is not pleaded or relied on as a defense in the case, and is not involved in it.

The contract is in writing, and the stipulation as to the payment is, "that when Charles F. Ashurst * * * pays or causes to be paid to me, the $4,000, the same being the purchase money with interest at ten per cent *per*

*annum*, then I promise and agree to make to the said Ashurst the same warranty titles that Burney and wife made to me.'' One of the notes provided for, the contract itself alleges was made, but when payable is not made known; and the other note, for some reason, was not executed at that time. In our former opinion, it was said, we would, under the averments of the bill, be justified in assuming, that the contract was to ''be performed within a reasonable time, and as much earlier as the vendee might choose to perform.'' Further consideration induces us to believe that the last is an incorrect statement of the principle referred to, and that the true rule is, as stated by Mr. Greenleaf, that ''where no time is expressly limited for the payment of the money mentioned in a special contract in writing, the legal construction is, that it is payable presently.''—1 Gr. Ev. § 277; *McAllister Bros. v. Templeton Bros.* in MSS. But in the case before us, whether the note was to be payable at one date or at another, could make no difference to the vendor, so far as the equities are concerned, since it was to bear interest, as a part of the purchase price, at ten per cent from the date of the contract of sale, so that the precise amount to be paid, before the title was due to the purchaser, was as definite without as with a note. It occurs to us, therefore, that whether the last note was given or not is wholly immaterial in the case, except in the aspect, that it might not have been due when the bill was filed, and the defendant was not required to take the money before it became payable. The presumption is, that if this note was executed and delivered, it was in the hands of the administrator, and, if not payable at the filing of the bill, that was a matter of defense. The point made, if good, would require a court to hold, that the complainant, after having paid all the purchase money under this written contract, would not, in equity be entitled to a specific performance, because of his failure to execute one of the notes for the purchase money, which, for some undisclosed reason, whether for the accommodation of the vendor or vendee, was not executed. The point is too technical to be just, and we will not exercise our discretion, in such matters, so as to allow it to prevail. There was no error in overruling the demurrer to the bill.

The objection of *laches* on the part of complainant in

seeking the relief sought in the bill, cannot be sustained under the facts disclosed in this case.

The facts stated in the bill, material to its equity, were either admitted in the answers, or satisfactorily established by the evidence. We refer only to such of them as are questioned. It will not be denied, that where a variance in the allegations and proof is relied on to defeat an action, such variance must be of a material or essential fact.—*Gilmer v. Wallace*, 75 Ala. 222; 1 Gr. Ev. § 67. It is said there is a variance in the proof, in that the bill alleges that Charles F. Ashurst owed the debt and executed the mortgage to Lehman, Durr & Co., whereas the proof shows that Ashurst Bros. were the debtors to that firm. The evidence is, that Ashurst Bros. as a firm, and Charles F. and J. V. Ashurst, as individuals, composing the firm, separately, executed the mortgage. The debt was, certainly, that of the individuals composing the firm, as well as of the firm itself. Besides, the mortgage recites, that the lands here involved were the property of Charles F. Ashurst and were subject to an incumbrance of $4,000, to A. B. Peck. The point is without any merit.

Again it is said, the bill alleges, the deed from Meyer Lehman to complainant was dated the 15th of February, 1889, and the proof shows, that it was dated the 15th February, 1890. Now, of what avail is such a variance in proof as that? The materiality of the proof is, that there was such a deed, and its value was not increased or diminished by the fact that it bore the latter and not the former date. And besides, there does not appear to have been any objection to proof, on account of variance.

Still further, it is objected, that the bill avers that the defendants, as heirs at law of A. B. Peck, were holders of the legal title, whereas it was shown, that before the bill was filed, the heirs had made a partition of the lands of said A. B. Peck, and conveyed, among themselves,—the lands in the bill described having fallen to Carrie R. Ashurst, one of the heirs. The precise allegation of the bill as to this matter is, ''That A. B. Peck died intestate, leaving the following children, heirs at law, to-wit, [naming them] and his widow, Sallie Peck, all of whom are over 21 years of age,'' and they are, each, with the administrator, very properly made defendants. We fail to see any merit in this objection.

[Peck, Admr., v. Ashurst.]

It is denied that the complainant is a purchaser of the mortgage of Lehman, Durr & Co., and it is urged, that he paid and extinguished it, and has no right to assert the right and claim of Charles F. Ashurst, under the same. His right, however, under the bill, was considered and decided aversely to this contention, on the other appeal, and the deed of Lehman, by its terms conveys to him as purchaser, "all our right, title, interest and claim in and to the," the lands in question.

It has been well said by counsel in his brief for appellee, "The state of accounts, whatever they may be, between J. V. Ashurst, surviving partner of the firm of Ashurst & Bro., and Chas. F. Ashurst, is a matter that does not concern the defendants. The right claimed of them in this case, is a right of Chas. F. Ashurst entirely, and it can be resisted only on the ground, that if Chas. F. was alive and had filed this bill, it could not be maintained." *Ashurst v. Peck*, 101 Ala. 506; *Wimbish v. M. M. B. & Loan Asso.*, 69 Ala. 578; 2 Story Eq. Juris. §§ 788–90; 1 Pom. Eq. §§ 368–72.

There is no error in the decree as rendered, of which defendant can complain. What was ordered to be ascertained by the register, is certainly important to be known, in adjusting the question of rents, by whom to be paid and for what time, in the final disposition of the accounting. Would it not have been better for defendants to have awaited these matters, reserved by the decree, before complaining? Their objection goes by way of anticipation of injury that may be done them in the end, rather than to any already inflicted. The administrator is certainly accountable for the rents and profits during the time he was in possession of the lands, but whether he is accountable for them after he turned them over to Carrie R. Ashurst, or whether she is accountable for them, after she gained their possession, we will not now decide, since these questions are not before us. But, that these matters, for anything appearing in the decree, may hereafter be rightly adjusted by the chancery court, cannot be questioned.

Affirmed.

BRICKELL, C. J., not sitting.