(100 South. 475)

WYE SHIPPING CO., Ltd., v. HUNTER, BENN & CO. (1 Div. 297.)

(Supreme Court of Alabama. Feb. 14, 1924. Rehearing Denied May 22, 1924.)

1. Shipping ⬤═148—Dispatch money and address commission held advancements and not payable on loading at par value of pounds sterling.

Dispatch money and address commission, to which charterer was entitled under charter-party fixing amount thereof in pounds sterling, *held* advancements · under provision for indorsement of advancements on bill of lading on account of freight to be deducted when freight was paid, in view of other provisions of charter party and conduct of parties so construing the charter party, as against contention that dispatch money and address commission be-

came due immediately on loading of vessel and payable in pounds sterling according to the par value thereof fixed by U. S. Comp. St. § 6537.

**2. Shipping ☞39—Charter parties construed according to intent of parties ,as manifested by whole instrument.**

Charter parties, like other contracts, must be construed according to the intent of the parties as manifested by the whole instrument rather than the literal meaning of any particular phase taken by itself.

**3. Customs and usages ☞12(2)—Party not bound by custom not so generally known as to justify presumption that parties knew of it.**

A party was not bound by a custom, in the absence of a showing that custom was so generally known as to justify presumption that parties knew of it.

**4. Shipping ☞148—Charterer held liable for amount wrongfully receipted for as advancement, notwithstanding cesser clause.**

Where charterer hired ship, which was loaded with its own freight, under charter party stipulating for payment of specified amount as freight, less advancements indorsed on bill of lading, and making charterer primarily liable for freight money, *held*, that charterer was liable for an amount which it required the master to receipt for, as an advancement, under protest, notwithstanding provision of charter party that charterer's responsibility should cease to exist on shipment of cargo and signing of bill of lading.

**5. Evidence ☞408(1)—Indorsement on bill of lading held subject to explanation.**

Under charter party requiring owner to make advances to be indorsed on bill of lading and to be deducted from the amount of freight, and entitling charterer to dispatch money and address commission, to be indorsed on bill of lading as advancements, owner could show, as between owner and charterer, that indorsement on bill of lading was merely a receipt subject to explanation, and that it was signed under protest and in contemplation of a future adjustment of the difference existing between the parties.

Appeal from Circuit Court, Mobile County; Saffold Berney, Judge.

Action on the common counts and for breach of charter party by the Wye Shipping Company, Limited, against Hunter, Benn & Co. Judgment for defendant, and plaintiff appeals. Reversed and rendered.

Count 7 of the complaint is as follows:

"(7) The plaintiff claims of the defendant the further sum of $3,888.15 damages, with the interest thereon, for the breach of an agreement in writing entered into by it with the plaintiff on or about, to wit, the 19th day of November, 1920, in substance as follows: The plaintiff, which was the owner of the steamship called 'Wye Tempest,' agreed to transport for the defendant in said steamship from Mobile, Ala., to London, Christie's Wharf, Charlton, a cargo of pitch pine sawn sleepers to be supplied by the defendant, for which the defendant agreed to pay the plaintiff 15 pounds, 10 shillings per St. Petersburg standard hundred of 165 cubic feet measure; that the said steamship was duly loaded with the said cargo furnished by the defendant, and said cargo was duly transported by the plaintiff in said steamship to London, Christie's Wharf, Charlton, in accordance with the said agreement; that, although plaintiff duly delivered said cargo as aforesaid, and complied with all the terms of its agreement with the defendant, the defendant nevertheless has failed to pay the plaintiff for transporting said cargo, in accordance with the terms of said agreement, the sum of 944 pounds, 10 shillings, 9 pence, which according to the rate of exchange then current amounts to $3,888.15, which with the interest thereon the defendant has wholly failed to pay to the plaintiff; wherefore the plaintiff sues the defendant for $3,888.15 damages, with the interest thereon, as aforesaid."

The charter party, the basis of the suit, is in part as follows:

"(6) The bills of lading shall be prepared by the shippers of the cargo on the form indorsed on this charter."

"(9) The freight to be paid in cash without discount, less the advance, if any, on right and true delivery of the cargo, but the receivers of the cargo are to pay on account of freight during delivery, if on the continent, in cash at the rate of exchange current on the day of steamer's arrival for short sight Banker's Bills on London."

"(13) The master or owners to have an absolute lien upon the cargo for all freight, dead freight, demurrage, and average, and, should the receiver require the cargo to be delivered overside or at a place where the owners cannot exercise their lien, then the approximate freight, etc., to be paid during delivery.

"(14) The vessel to be consigned to charterers or their agents at the port of loading paying them 2½ per cent. address commission on the estimated amount of freight."

"(20) Charterers' responsibility under this charter shall cease as soon as the cargo is shipped and bills of lading signed, provided all the conditions called for in this charter have been fulfilled or provided for by bills of lading."

Inge & Bates, of Mobile, for appellant.

Where a case is tried without a jury, and the evidence is mainly in writing, the Supreme Court will review the judgment of the court below without any presumption in its favor, and will render the appropriate judgment or reverse and remand as may be right. Acts 1915, p. 940; Maisel v. State, 17 Ala. App. 12, 81 South. 348. Where there is an indebtedness in pounds sterling, which may be paid in United States money, it shall be computed, not by the par of exchange as fixed under the acts of Congress, but by the rate of exchange current at the time the indebtedness becomes due and payable, on the principle that such sum is the equivalent of the obligation at that time. Liberty Nat. Bank of N. Y. v.

Burr (D. C.) 270 Fed. 251. A custom cannot vary the terms of a contract, unless the party to be charged therewith had knowledge thereof, and contracted in reference thereto. Gould v. Cates Chair Co., 147 Ala. 629, 41 South. 675; U. S. H. & A. Ins. Co. v. Hill, 9 Ala. App. 222, 62 South. 954; Middleton v. Western U. Tel. Co., 197 Ala. 243, 72 South. 548; Edwards v. Kilgore, 192 Ala. 343, 68 South. 888. A payment made under duress of property can be recovered. Prichard v. Sweeney, 109 Ala. 651, 19 South. 730; Town Council of Cahaba v. Burnett, 34 Ala. 400; Ripley v. Golston, 9 Johns. (N. Y.) 201, 6 Am. Dec. 271; Radich v. Hutchins, 95 U. S. 210, 24 L. Ed. 409. Where a bill of lading has indorsed thereon a receipt for a portion of the freight money, the ship's lien for the freight money to the extent of the amount named in the indorsement is released, and cannot be enforced against the holder of the bill of lading. Crossman v. Burrill, 179 U. S. 100, 21 Sup. Ct. 38, 45 L. Ed. 106; Poor on Charter Parties, §§ 27, 53. The cesser clause of a charter party, which substitutes a lien on the cargo in lieu of the charterer's personal liability, is inapplicable to a liability with which the lien is not commensurate. Crossman v. Burrill, supra; Poor, supra.

Smiths, Young, Leigh & Johnston, of Mobile, for appellee.

As no time of payment was fixed, the indebtedness became due immediately. Peck v. Ashurst, 108 Ala. 429, 19 South. 781. And, as no place was fixed, payment of the debt was due at Mobile. Mayberry v. Leech, 58 Ala. 339; L. & N. v. Dooley, 78 Ala. 524; A. G. S. v. Chumley, 92 Ala. 317, 9 South. 286; L. & N. v. Nash, 118 Ala. 477, 23 South. 825, 41 L. R. A. 331, 72 Am. St. Rep. 181. The testimony being largely oral, the finding of fact by the trial court is binding on the appellate court. Davis v. Harrell, 209 Ala. 528, 96 South. 616; Price v. Price, 199 Ala. 433, 74 South. 381. Indorsement and credit being made without protest, the payment was voluntary. Cahaba v. Burnett, 34 Ala. 400; So. Ry. v. Mayor, etc., 141 Ala. 493, 37 South. 844, 3 Ann. Cas. 106; Winter v. City Council, 65 Ala. 410.

GARDNER, J. The Wye Shipping Company (appellant here) is a corporation with its principal place of business in London, England. Hunter, Benn & Co. (defendant to this action) was a corporation engaged in the export lumber business at Mobile, Ala. In November, 1920, the plaintiff was the owner of the steamship called the "Wye Tempest," and in said month entered into a written charter party with the defendant— under the terms of which the said steamship was hired to the defendant for the purpose of proceeding from London to Mobile, at which latter point it was to receive from the charterers a full cargo of pitch pine sawn sleepers. This cargo was to be transported from London, and there delivered at Christie's Wharf, Charlton, the freight money to be £15.10.0 per St. Petersburg standard hundred of 165 cubic feet measure.

Under certain provisions of the charter party the charterer was allowed a certain number of days in which to load the vessel, called lay days, and for each day the vessel was detained by the charterer beyond the lay days the charterer was due to pay demurrage to the vessel at the rate of £200 per day. On the other hand, however, if the charterer did not consume all of the lay days, and the vessel was sooner loaded, the days so saved by the charterer are called dispatch days, and for which it was obligated to pay the charterer the sum of £100 per day so saved in loading the vessel. This is called dispatch money.

Under section 14 of the charter party the charterer was entitled to 2½ per cent. address commission on the estimated amount of the freight, and in making up their account against the vessel the defendant fixed the estimated amount of freight at £15,428.10.6. In loading the vessel there was saved 23.4875 days which, at £100 per day, placed the indebtedness of the ship to the charterer at the sum of £2348.15.0.

This account discloses that this dispatch money was converted into dollars by the charterer at the rate of $4.86⅔ to the pound, which was the par rate of exchange, making the sum of $11,430.58. The address commission which amounted to £385.14.3 was likewise changed into dollars at the par rate of exchange for $4.86⅔, making the sum of $1,877.12. The dispatch money was then again converted into pounds at the current rate of exchange of $3.75 to the pound, making £3,048.3.0. By such a change therefore the dispatch money was increased from £2348.15.0 to £3048.3.0, or an increase of £699.8.0, which at the current rate of exchange of $3.75 amounted to an increase of $2,622.69. The address commission was likewise increased £113.18.9, which at the current rate of exchange amounted to an increase of $427.17. The total increase by reason of the difference between the par and the current rate of exchange was £713.6.9, or the sum of $3,049.86. This account being presented to the master, he objected to this rate of exchange, but, after some discussion with the defendant's representative, signed the account under protest. The total amount of this account on January 22, 1921, was £5425.17.0. The defendant prepared the bill of lading, and had indorsed thereon the following:

"Received on account of freight, five thousand four hundred twenty-five (5,425) pounds, seventeen (17) shillings and no pence, on which commission and insurance have been paid.

"£5,425.17.0.          T. Merifield, Master."

The steamship with its cargo duly arrived at London, Christie's Wharf, Charlton, about February 8, 1921. The cargo appears to have been delivered to Christie & Christie, who paid the freight after deducting therefrom the £5,425.17.0 receipted on the bill of lading and embraced within the account advanced by the defendant. The bill of lading shows that the cargo was assigned to Price & Pierce, Ltd., "or their assigns, he or they paying freight." Plaintiff again protested against the items as to dispatch money and address commission, as increased by reason of the difference between the par and current rate of exchange, but of no avail; and hence this litigation.

The complaint consists of common counts, including account for money had and received, and also No. 7 rested upon a breach of the charter party as to payment of the freight, heretofore referred to. The cause was tried before the court without a jury; the evidence being both by deposition and oral testimony, resulting in a judgment in favor of the defendant—from which the plaintiff has prosecuted this appeal. As previously shown, 'the only questions involved relate to the dispatch money and address commission; and these only to the extent as they were increased by reason of the difference between the par and current rate of exchange.

The defendant insists that, as no time was fixed by the charter party for the payment of the dispatch money and address commission, this indebtedness became due immediately, citing Peck v. Ashurst, 108 Ala. 429, 19 South. 781; and that, as the charter party fixed no place of payment, the debt was payable at Mobile, the residence of the creditor. Mayberry v. Leech, 58 Ala. 339, among other authorities cited. Proceeding upon this line of reasoning the defendant argues that this money was due immediately upon the vessel being loaded, and payable at Mobile in pounds sterling; and that, as the parties had the right to fix by their contract a payment of such medium as they chose, the plaintiff in this action could not insist upon a right to discharge the debt in United States currency; that the par value of a pound sterling was fixed by Act of Congress at $4.8665. U. S. Comp. Stat. § 6537.

[1, 2] We have considered this argument with due care, but find it at variance with our construction of the contract which the parties have entered into. As said by the Supreme Court of the United States in Crossman v. Burrill, 179 U. S. 100, 21 Sup. Ct. 38, 45 L. Ed. 106, charter parties, like other contracts, "must be construed according to the intent of the parties as manifested by the whole instrument, rather than the literal meaning of, any particular clause, taken by itself."

The provisions of the charter party, which are here pertinent, are reproduced in the report of the case.

Section 4 reads as follows:

"Sufficient cash for steamer's ordinary disbursements to be advanced the master by the charterers at port of loading if required by him, at current exchange subject to 2½ per cent. commissions and also cost of insurance, such advance to be indorsed upon the bills of lading on account of freight, but no draft to be given for such advance."

By section 9 it is provided that the freight is to be paid in cash without discount, less the advance, if any, on delivery of the cargo; and this section likewise refers to the current rate of exchange.

It is insisted by counsel for the plaintiff that the dispatch money and address commission should be construed as coming within the meaning of section 4, as an advancement, and, if so, it was to be merely indorsed upon the bill of lading on account of freight, and to be deducted therefrom when the freight was paid. Very clearly, if these charges are to be considered as advancements, they were not payable at Mobile, and the increased amount by virtue of this difference in exchange was unjustified.

If this be the proper construction, the question of settlement and statement of account was very simple. The freight was payable in pounds sterling; the dispatch money was also payable in pounds sterling, and so, likewise, the address commission. The defendant made actual advances in money to the vessel while at the port of Mobile, which amounted to $6,327. If plaintiff's contention be correct, therefore, it was only necessary to convert this latter sum into pounds at the current rate of exchange of $3.75 to the pound sterling, and add such pound sterling to the dispatch money and address commission, which were already in pounds sterling, and indorse the total amount upon the bill of lading.

We think it clearly appears that the parties to this contract themselves considered that the dispatch money and address commission were to be treated as advancements under the charter party. In stating the account it appears that the charterer charged 2½ per cent. commissions for advancing $19,634.70; and an examination of the account discloses that the dispatch money and address commission compose two of the items of this sum.

The answer of defendant to the tenth and twelfth interrogatories propounded by the plaintiff clearly disclose that the items here in question were intended to be included when reference was made to the amount advanced to the master of the vessel. The answer to the thirteenth interrogatory is also to like effect, and discloses that the dispatch money was, after having been first converted into dollars, reconverted into

pounds in order to be indorsed upon the bill of lading as provided for advancements under section 4 of the charter party. Speaking of the dispatch money, the answer says "defendant was obligated to advance the necessary funds to cover it at the ordinary rate of exchange to be indorsed upon the bill of lading." It was specifically provided that such advancements should merely be indorsed upon the bill of lading on account of freight, and no draft given therefor. The entire charter party and the conduct of the parties themselves disclose, to our minds, that it was the intention of the parties that the final settlement of the accounts be had upon delivery of the cargo at London, where the freight was to be paid in cash, less the advance, if any.

It would be unreasonable to assume that the owner would be careful to guard against the master giving a draft for actual cash advanced, and yet that he should have contracted to pay at the port of loading in the city of Mobile dispatch money and address commission in English currency. True, the specific provision in reference to dispatch money and address commission is silent as to the time and place of payment, but we are persuaded that the charter party, viewed as a whole, clearly indicates the purpose of the parties that these charges should be treated as advances to be deducted from the freight upon delivery of the cargo, and not otherwise, and that, indeed, such is the construction which the defendant itself, through its representative, placed upon such charter party.

[3] Defendant offered proof tending to show that it was customary at the gulf ports to render such accounts in the manner treated by the defendant in this case. There is nothing, however, to show any knowledge on the part of the plaintiff of any such custom, nor that it was so generally known as to justify the presumption that the parties knew of it, and contracted with reference thereto. The proof offered, therefore, in respect to such custom, is without material bearing upon this appeal. Gould v. Cates Chair Co., 147 Ala. 629, 41 South. 675; Loval v. Wolf, 179 Ala. 505, 60 South. 298.

We are therefore of the opinion that the defendant was not justified in the method of calculation used as to the dispatch money and address commission, but that the amount thereof in pounds sterling should have been entered on the bill of lading to be deducted from the freight when paid.

It is further insisted, however, that there was only evidence tending to support the count for money had and received, and that as to this count the evidence shows there has been a voluntary payment which would bar recovery.

We pretermit, however, a consideration of any count save count 7, rested upon a breach of the charter party as to the payment of the freight. We think the evidence sufficiently supports recovery under this count without regard to any other.

[4] The charter party was made directly between the plaintiff and defendant, and under its terms the plaintiff hired to the defendant this steamship for the purpose of transporting a cargo of timber from Mobile to London, to be transported for an agreed price. Section 4, as hereinbefore noted, provides that certain advances were to be made by the charterer, which were not to be repaid at Mobile, but were to be indorsed on the bill of lading on account of freight; and in section 9 it was stipulated that the freight was to be paid less the advance. The charterer hired the ship which was loaded with its own freight, and we think it clearly appears that the charterer was primarily liable for the freight money, which liability could not be discharged until it was actually paid, or until a lien was established in lieu of this personal liability.

True, section 20 of the charter party provided that the charterer's responsibility under the charter party should cease as soon as the cargo is shipped and the bill of lading signed, provided all conditions called for therein have been filled, or provided for by the bill of lading. Such a provision is referred to as the "cesser clause," which was construed in Crossman v. Burrill, supra. In that case there were demurrage charges against the charterer which were omitted in the bill of lading. The charter party contained provisions similar to those of section 20, above noted, relieving the charterer of liability when the vessel is loaded and bill of lading signed. It was held, under the bill of lading, the consignees were not liable for the demurrage, but that the charterer was still liable therefor, notwithstanding the cesser clause. In this connection the court said:

"In short, in a charter party which contains a clause for cesser of the liability of the charterers, coupled with a clause creating a lien in favor of the shipowner, the cesser clause is to be construed, if possible, as inapplicable to a liability with which the lien is not commensurate."

So, in the instant case, under the foregoing authority, the cargo was to be delivered to the consignees or its assigns upon the payment of the freight, less the amount of advances indorsed on the bill of lading. The plaintiff as owner of the vessel had lost his lien for the sum sued for.

[5] Plaintiff may therefore show that the indorsement on the bill of lading was, as between the parties, but a receipt subject to explanation, and show that it was signed under protest, and in contemplation of a future adjustment of the difference existing between the parties. Stegall v. Wright, 143 Ala. 204, 38 South. 844. The defendant's

representative gave the master of the vessel clearly to understand when he objected to the rate of exchange that his approval under protest would suffice to save the matter for future adjustment and destroy the finality of the receipt.

We are therefore of the opinion that the plaintiff has made out a case showing primary liability on the part of the defendant for the freight charges of this vessel, and as to this difference wrongfully receipted for the plaintiff had lost its lien, and that therefore the defendant is not relieved from responsibility by virtue of the provisions of the cesser clause, for freight still due and unpaid, for which, as previously stated, the defendant was primarily liable. We therefore conclude that the plaintiff is entitled to recover under count 7 of the complaint.

It appears without dispute that the amount wrongfully receipted for, when converted into dollars and cents, is $3,049.86, for which recovery should be had as of date January 22, 1921.

The fact that this cause was tried partly on oral testimony is without material bearing upon this appeal, as the conclusion which we have reached is rested upon the written contract and the undisputed evidence in the cause. The rule, therefore, found stated in Price v. Price, 199 Ala. 433, 74 South. 381, and Davis v. Harrell, 209 Ala. 528, 96 South. 616, is without application under these circumstances. Murphree v. Hanson, 197 Ala. 246, 72 South. 437.

It results that the judgment of the court below will be here reversed and a judgment rendered in favor of the plaintiff, as above indicated.

Reversed and rendered.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.